Eric J. Gitig (SBN 307547)
Jennifer Jambor-Delgado (SBN 218363)
Andrew J. Im (SBN 351247)
JACKSON LEWIS P.C.
725 South Figueroa Street, Suite 2800
Los Angeles, California 90017-5408
Tel: (213) 689-0404
Fax: (213) 689-0430
Eric.Gitig@jacksonlewis.com
Jennifer.Jambor-Delgado@jacksonlewis.com
Andrew.Im@jacksonlewis.com

Attorneys for Defendant
NORTHWOOD HOSPITALITY LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JACOB CRABILL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>NORTHWOOD HOSPITALITY LLC, a Delaware limited liability company; and DOES 1 through 100, inclusive,<br><br>Defendants. | **CASE NO.:**<br><br>**NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, and 1453**<br><br>(Filed concurrently with Declarations of Jennifer Jambor-Delgado and Tricia Price; Civil Case Cover Sheet; Certification and Notice of Interested Parties; and Corporate Disclosure Statement)<br><br>Complaint Filed: July 1, 2026 |

**TO THE HONORABLE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, PLAINTIFF JACOB CRABILL, AND PLAINTIFF'S ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendant NORTHWOOD HOSPITALITY LLC ("Northwood") hereby invokes this Court's jurisdiction under the provisions of 28 U.S.C. §§ 1332, 1441, 1446 and 1453, and removes the above-entitled action to this Court from the Superior Court of the State of California in and for the County of Los Angeles based on the Class Action Fairness Act of 2005 ("CAFA"). In support thereof, Northwood asserts the following:

## SERVICE AND PLEADINGS FILED IN STATE COURT

1. On July 1, 2026, Plaintiff JACOB CRABILL ("Plaintiff") filed a complaint against Northwood in the Superior Court of the State of California, County of Los Angeles, entitled *JACOB CRABILL, individually and on behalf of all others similarly situated, Plaintiff, v. NORTHWOOD HOSPITALITY LLC, a Delaware limited liability company; and Does 1 through 100, inclusive, Defendants;* Case No. 26STCV21087, which sets forth the following nine causes of action: (1) failure to pay minimum wage; (2) failure to pay overtime compensation; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) failure to pay split-shift premiums; (6) failure to furnish timely and accurate wage statements; (7) waiting time penalties; (8) failure to indemnify for all necessary expenditures and losses; and (9) unfair competition (the "Complaint"). As stated in paragraph 84 of the Complaint, Plaintiff brings these claims on behalf of himself and a putative class of "Northwood's current and former California employees," belonging to enumerated subclasses at any time from four years[1] preceding the filing of the initial complaint in this action through the date of judgment. (Declaration of Jennifer Jambor-Delgado["Jambor-Delgado Decl."] ¶ 2.)

[1] Two of the twelve subclasses identified in paragraph 84 of the Complaint are defined by shorter class periods that correspond to the applicable statutes of limitations for the wage statement and waiting time penalty claims, which are one year and three years, respectively.

2. Plaintiff served Northwood with a copy of the Summons and Complaint on July 16, 2026. (*Id.* ¶ 3.) True and correct copies of the Summons, Complaint, and other related court documents served on Northwood are attached as Exhibit "A" to the Jambor-Delgado Declaration.

3. On August 12, 2026, Northwood filed and served an Answer to the Complaint in the Los Angeles Superior Court, making a general denial as permitted by California Code of Civil Procedure § 431.30(d) and asserting various affirmative defenses. A true and correct copy of Northwood's Answer is attached as Exhibit "B" to the Jambor-Delgado Declaration. (*Id.* ¶ 4.)

4. As of the date of this Notice of Removal, Exhibits "A" and "B" to the Jambor-Delgado Declaration constitute all of the pleadings filed or received by Northwood in this matter. (*Id.* ¶ 5.)

**TIMELINESS OF REMOVAL**

5. This Notice of Removal has been filed within the time-period mandated by 28 U.S.C. § 1446(b). (Jambor-Delgado Decl. at ¶ 3.) *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 354 (1999); *see also* California Code of Civil Procedure § 415.30(b).

**VENUE IS PROPER**

6. This action was filed in the Superior Court in and for the County of Los Angeles. Thus, venue of this action properly lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 84(c)(1) and 1441(a). Venue of this action is also proper pursuant to 28 U.S.C. § 1391, which provides that an action may be venued in a judicial district where a substantial part of the events or omissions giving rise to the claim occurred, and where, based on information and belief, the plaintiff resides. (Jambor-Delgado Decl. ¶ 3, Exhibit "A" ["Compl."] ¶¶ 1, 5, 6; Declaration of Tricia Price ("Price Decl.") ¶ 3.)

**REMOVAL IS PROPER BASED ON CLASS ACTION FAIRNESS ACT**

7. Removal of this action is proper under CAFA, 28 U.S.C. §§ 1332 *et seq.* Section 4 of CAFA, 28 U.S.C. § 1332(d)(2), has been amended to read, in relevant part:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

8. In addition, CAFA provides for jurisdiction in the district courts where the proposed class involves 100 or more members, or where the primary defendants are not States, State officials, or other governmental entities. (28 U.S.C. § 1332(d)(5).)

9. As set forth below, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(d), in that it is a civil action filed as a class action that – based on the allegations in the Complaint – involves more than 100 members and an amount in controversy exceeding the sum of $5,000,000, exclusive of interest and costs, and Plaintiff is a citizen of a state different from Northwood. 28 U.S.C. §§ 1332(d) and 1453.

**A. The Putative Class Contains More Than 100 Members.**

10. Northwood's records identify over 100 individuals who have been employed by Northwood as non-exempt employees in the State of California during the "Putative Class Period" between July 1, 2022, and the present (collectively referred to herein as "Putative Class Members" or the "Putative Class"). (Price Decl. ¶ 7.) Accordingly, the numerosity requirement for jurisdiction under CAFA is satisfied.

**B. Northwood is not a Government Entity.**

11. Northwood is not a State, a State official, or any other government entity. (*Id.* ¶ 4.)

**C. Minimal Diversity is Satisfied Under CAFA.**

12. CAFA's diversity requirement is satisfied when there is minimal diversity, *i.e.*, when at least one member of a class of plaintiffs is a citizen of a state in which none of the defendants are citizens. 28 U.S.C. § 1332(d)(2); *see Snyder v. Harris*, 394 U.S. 332, 340 (1969) ("if one member of a class is of diverse citizenship from the class' opponent, and no nondiverse members are named parties, the suit may be brought in federal court even though all other members of the class are citizens of the same State as the defendant."); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (holding that to achieve its purposes,

CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)); *Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCx), 2015 U.S. Dist. LEXIS 120800, at *13 (C.D. Cal. Sep. 10, 2015) ("[defendant] needed only to establish that one plaintiff was a citizen of a different state from any one defendant at the time of removal.").

13. Citizenship of the parties is determined by their citizenship status at the action's commencement. *Mann v. City of Tucson*, 782 F.2d 790 (9th Cir. 1986).

14. For individuals, citizenship is determined by a person's domicile. *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return."). While residence and citizenship are not the same, a person's place of residence is *prima facie* evidence of his or her citizenship. *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"; *see also Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, at *22 (E.D. Cal. 2008).) Furthermore, a person's intention to remain may be established by his or her place of employment. *Youn Kyung Park v. Holder*, 572 F.3d 619, 625 (9th Cir. 2009); *see also Francisco v. Emeritus Corp.*, No. CV 17-02871-BRO (SSx)), 2017 U.S. Dist. LEXIS 90131, at *10 (C.D. Cal. June 12, 2017) ("Plaintiff's residence and employment in California are sufficient evidence of his intent to remain in California.").

15. Northwood is informed that Plaintiff was, at the time this action was commenced, and still is, a resident and citizen of the State of California. (Compl. ¶ 1; Price Decl. ¶ 3.)

16. For purposes of removal under CAFA, the citizenship of a limited liability company is analyzed as an "unincorporated association" under Section 1332(d)(10). *Ferrell v. Express Check Advance of Georgia*, 591 F.3d 698, 704 (4th Cir. 2010); *Ramirez v. Carefusion Res., L.L.C.*, No. 18-2852, 2019 U.S. Dist. LEXIS 112995, at *5 (S.D. Cal.

July 1, 2019). CAFA expressly states that "for purposes of this section .... an unincorporated association or corporation is deemed to be a citizen of the state where it has its principal place of business and under whose laws it is incorporated or organized." 28 U.S.C. § 1332(d)(10). This is different from Section 1332(c) which has been interpreted to provide that "[a]n L.L.C. is a citizen of every state in which is owners/members are citizens." *Johnson v. Columbia Properties Anchorage*, 437 F.3d 894, 899 (9th Cir. 2006). A corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business. *See* 28 U.S.C. § 1332(c); *Hertz Corp v. Friend*, 559 U.S. 77, 92-93 (2010).

17. At the time Plaintiff filed the Complaint and presently, Northwood has been organized under the laws of the State of Delaware. (Price Decl. ¶ 5.) Although paragraph 2 of the Complaint refers to Northwood as a "Delaware limited liability partnership," Northwood is, and at all relevant times has been, a limited liability company organized under Delaware law, as the caption of the Complaint itself reflects. (*Id.*) At all relevant times, Northwood's company headquarters – and thus its principal place of business – has been in the State of Colorado, where the majority of its executive, administrative, financial and management functions are conducted, and from where the majority of its high-level officers direct, control, and coordinate the company's operations and activities. (*Id.*) Accordingly, for purposes of removal under CAFA, Northwood is a citizen of the States of Delaware and Colorado and is not a citizen of the State of California.

18. Given the above, minimal diversity exists under CAFA because at least one member of the Putative Class (Plaintiff) was, at the time this action was commenced – and is still believed to be – a citizen of the State of California, while Northwood was – and still is – a citizen of the States of Delaware and Colorado. 28 U.S.C. § 1332(d)(2).[2]

[2] The citizenship of the Doe defendants is immaterial for the purpose of determining minimal diversity under CAFA. 28 U.S.C. §§ 1332(d)(2) and 1441(a); *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007).

**D. <u>The Amount In Controversy Exceeds $5,000,000 Based On A Plausible Reading Of The Allegations Of The Complaint</u>.**

19. Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under CAFA: "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. Rep. 109-14, at 42. Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case … Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly…").

20. In determining whether the amount in controversy exceeds $5,000,000, the Court must presume Plaintiff will prevail on each and every one of his claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp. 993, 1001 (C.D. Cal. 2002) *citing Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability"); *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim"). Moreover, the argument and facts set forth herein may appropriately be considered in determining whether the jurisdictional amount in controversy is satisfied. *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 843, n.1 (9th Cir. 2002) (*citing Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969).

21. Further, a removing party is "permitted to rely on 'a chain of reasoning that includes assumptions' to calculate the amount in controversy" and those reasonable assumptions "can be 'founded on the allegations of the complaint'" and "do not necessarily

need to be supported by evidence." *Perez v. Rose Hills Co.* 131 F.4th 804, 806 (9th Cir. 2025) (*quoting Arias v. Residence Inn*, 936 F.3d 920, 922, 925 (9th Cir. 2019) ("[a]n assumption may be reasonable if it is founded on the allegations of the complaint")). Only when the calculations cannot be justified by the allegations in the complaint—or are "unreasonable" assumptions—is the removing party required to present evidence to support the assumptions made. *Perez*, 131 F.4th at 808 (*citing Ibarra v. Manheim Invs*., Inc., 775 F.3d 1193, 1198 (9th Cir. 2015)); *see also Rubel v. U.S. Nursing Corp*., No. 1:23-cv-1664-JLT-CDB, 2025 U.S. Dist. LEXIS 54087 at *19-20 (E.D. Cal. Mar. 24, 2025).

22. Notably, "[t]here is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation." *Muniz v. Pilot Travel Ctrs. L.L.C.*, 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal. Apr. 30, 2007). Rather, a defendant seeking removal must prove by a preponderance of the evidence the aggregate amount in controversy exceeds the jurisdictional minimum. *Jauregui v. Roadrunner Transp. Servs*., 28 F.4th 989, 991-994 (9th Cir. 2022) (finding that the district court erred in imposing – both explicitly and in its analysis – a presumption against CAFA jurisdiction, and holding instead that the defendant was only required to show the amount in controversy by a preponderance of evidence); *Rodriguez v. AT&T Mobility Servs. Ltd. Liab. Co.*, 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard"); *see Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability"); *Arias v. Residence Inn*, 936 F.3d 920, 922, 925 (9th Cir. 2019) (the removing defendant may rely on reasonable assumptions in estimating the amount in controversy, which "need not be proven").

23. In *Dart Cherokee Basin Operating Company, L.L.C. v. Owens*, the United States Supreme Court held, like here, the complaint is silent as to whether the amount in controversy meets CAFA's jurisdictional threshold of $5,000,000 "a defendant's notice of removal need

include only a *plausible* allegation that the amount in controversy exceeds the jurisdictional threshold." 135 S. Ct. 547, 554 (2014) (emphasis added). Following *Dart*, the Ninth Circuit confirmed "a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements," and further that "when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions." *Salter v. Quality Carriers, Inc.*, 2020 U.S. App. LEXIS 28364, *6-7 (9th Cir. Sep. 8, 2020) (citations and internal quotation marks omitted). Further, "'[n]o "antiremoval presumption attends cases invoking CAFA' because 'Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court.'" *Adams v. Toys 'R' US – Delaware, Inc.*, 2015 U.S. Dist. LEXIS 11338, at *5-6 (N.D. Cal. Jan. 29, 2015) *quoting Dart*, 135 S. Ct. at 554.) On the contrary, courts are required to interpret CAFA's provisions broadly in favor of removal. *Jordan v. Nationstar Mortg. L.L.C.*, 781 F.3d 1178, 1183-84 (9th Cir. 2015).

24. Moreover, if a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise. *See e.g.*, *Mendoza v. OSI Indus., L.L.C.*, No. EDCV 22-1202 JGB (SPx), 2022 U.S. Dist. LEXIS 167940, at *11-18 (C.D. Cal. Sep. 16, 2022) ("Because Plaintiffs allege a 'policy' of requiring employees to work through their meal and rest break periods, without specifying a violation rate or offering evidence of a rate lower than that assumed by Defendant, the Court finds Defendant's estimate of five meal break violations and five rest break violations per employee per week reasonable … [and also finds Defendant's] assume[d] violation rate of 100% for failure to timely pay wages at the end of class members' employment and to issue accurate wage statements … reasonable and consistent with Plaintiffs' allegations."); *Muniz v. Pilot Travel Ctrs. L.L.C.*, 2007 U.S. Dist. LEXIS 31515, at *12-13 (E.D. Cal. Apr. 30, 2007) ("As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her

claims which would narrow the scope of the putative class or the damages sought.") (*citing Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987)); *see also Arreola v. The Finish Line,* No. 14- CV-03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation— when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.").

25. Plaintiff's Complaint does not allege a specific amount in damages. However, Plaintiff alleges that his "employment was governed by uniform company-wide policies and practices" that resulted in systemic violations of the California Labor Code. (Compl. ¶¶ 7, 8.) Plaintiff further asserts his claims "are typical of the claims of other Class Members," and that he and the Class "sustained injuries and damages arising out of and caused by Northwood's common course of conduct." (Compl. ¶ 88.) Thus, without admitting that Plaintiff could recover any damages whatsoever, a plausible reading of the factual allegations and causes of action set forth in the Complaint[3] conservatively places an aggregate amount in controversy exceeding $5,000,000, exclusive of attorneys' fees, interest, and costs, as follows:

**Failure to Pay Minimum Wages for All Hours Worked, Including Off-the-Clock and Unrecorded Time (First Cause of Action)**

26. The Complaint alleges that Northwood failed to compensate Plaintiff and Class Members "for all hours worked at no less than the applicable minimum wage." (Compl. ¶¶ 21, 25.) Plaintiff alleges that Northwood "regularly requires" employees to

---

[3] *See e.g. Lucas v. Michael Kors (USA) Inc.,* No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *8 (C.D. Cal. May 9, 2018) ("Defendants may use reasonable assumptions in calculating the amount in controversy for purposes of removal.").

work shifts that are not recorded in Northwood's electronic timekeeping system and are thus uncompensated. (Id. ¶ 9.) To illustrate this point, Plaintiff contends Northwood does not preload any banquet and conference events into its ADP timekeeping system, so employees cannot clock in for those events; that the resulting hours are recorded on paper and entered into ADP manually by a manager after the fact; and that when a manager fails to make that entry, the hours "do not appear in that period's paycheck." (*Id.* ¶¶ 9, 22, 69.) Plaintiff alleges the same is true of additional shifts picked up near the ADP payroll submission deadline. (*Id.*) Plaintiff further alleges that Class Members performed compensable work during unpaid meal periods, and that those minutes "constitute hours worked for which no wages were paid." (*Id.* ¶ 23.) Plaintiff alleges that these practices are "uniform, systemic, and arise from Northwood's centralized business model and operational decisions," and that they affected Plaintiff and all Class Members. (*Id.* ¶ 19.) Plaintiff also expressly seeks liquidated damages in an amount equal to the wages allegedly unpaid, pursuant to Labor Code § 1194.2. (*Id.* ¶¶ 96, 103.)

27. Thus, while Northwood completely denies Plaintiff is entitled to recover any unpaid wage damages, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least 2.5 hours of unpaid wages per workweek for all Putative Class Members, which would place at least <u>$1,723,575.00</u> in controversy in connection with the minimum wage claim (2.5 hours per workweek x $15.00 per hour minimum wage rate[4] x 22,981 workweeks = $861,787.50, doubled to $1,723,575.00 to account for the liquidated damages expressly sought under Labor Code § 1194.2). (Price Decl. ¶ 7.) That figure is conservative. The Complaint alleges that where a local minimum wage ordinance sets a rate higher than the state minimum wage, the employer must pay the local rate, and that the West Hollywood Minimum Wage Ordinance required hotel workers such as Plaintiff and the Putative Class Members to be paid between $18.31 and $20.87

---

[4] Northwood conservatively calculated the unpaid wages in controversy using the lowest California minimum wage rate applicable to employers with 26 or more employees during the Putative Class Period. (Minimum Wage Frequently Asked Questions, https://www.dir.ca.gov/dlse/faq_minimumwage.htm.)

per hour during the Putative Class Period. (Compl. ¶¶ 5, 100–101.) The $15.00 rate applied here is below every one of those rates, and Northwood expressly reserves the right to rely on the higher rates the Complaint itself alleges. This figure also assigns no separate value to Plaintiff's overtime and double-time claims, which Northwood likewise reserves. (Compl. ¶¶ 26–33.)

**Failure to Provide Meal Periods (Third Cause of Action)**

28. The Complaint alleges that Northwood "does not schedule meal periods or rest breaks on any shift," makes employees "responsible for scheduling their own meal period," and "provides no coverage or relief staffing to allow employees to step away from their duties." (Compl. ¶ 12.) Plaintiff broadly alleges that employees' duties "regularly prevent them from taking timely, uninterrupted" meal breaks. (*Id.* ¶ 13.) To reinforce this assertion, Plaintiff points to several of Northwood's alleged practices, such as requiring overnight employees to clock out for a meal period while continuing to perform room service duties throughout it; "regularly" failing to provide day shift employees with timely meal breaks; and providing no meal periods to employees working banquet or conference events, such that those employees "regularly work from the banquet start time through the end of the regular shift, a period of 13 hours or more, without any break." (*Id.* ¶¶ 13, 15, 37–39.) Plaintiff further alleges that on those days the combined work period exceeds ten hours, "triggering the second meal period obligation, for which Northwood provides no coverage and pays no premium," and that Northwood did not pay meal period premium wages for each missed or non-compliant meal period as required by Labor Code § 226.7(c). (*Id.* ¶¶ 39, 43.)

29. Thus, while Northwood completely denies Plaintiff is entitled to recover any meal period premiums, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least two meal period premiums per workweek for all Putative Class Members during the Putative Class Period, which would place over <u>$1,148,130.76</u> in controversy in connection with his meal period claim ($24.98 average hourly rate x 2 meal period premiums per workweek x 22,981 workweeks). (Price Decl. ¶

7.) That assumption is conservative given Plaintiff's allegations that Putative Class Members are "regularly" prevented from taking compliant meal periods. (Compl. ¶¶ 13, 15, 37–39.)

**Failure to Provide Rest Periods (Fourth Cause of Action)**

30. The Complaint alleges that "[t]he same structural conditions that prevent compliant meal periods . . . equally prevent Mr. Crabill and Class Members from taking compliant rest periods," and identifies those conditions as the failure to schedule breaks, the absence of any coverage or relief staffing, managers who are not trained to take over service duties, the requirement that employees answer guest calls within three rings throughout their shifts, and event assignments scheduled to run directly into regular shifts. (Compl. ¶ 49.) Plaintiff further alleges that employees working shifts of more than ten hours are entitled to a third rest period, and asserts that Northwood did not pay rest period premium wages for each missed rest period as required by Labor Code § 226.7(c). (*Id.* ¶¶ 47, 48, 50.)

31. Thus, while Northwood completely denies Plaintiff is entitled to recover any rest period premiums, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least two rest period premiums per workweek for all Putative Class Members, which would place over <u>$1,148,130.76</u> in controversy in connection with his rest period claim ($24.98 average hourly rate x 2 rest period premiums per workweek x 22,981 workweeks). (Price Decl. ¶ 7.)

**Failure to Provide Accurate Itemized Wage Statements (Sixth Cause of Action)**

32. The Complaint alleges that Northwood "knowingly and intentionally failed to furnish Mr. Crabill and Class Members with timely and compliant wage statements." (Compl. ¶ 136.) Plaintiff alleges that the wage statements reflect two distinct regular pay rates without establishing the basis for each or the hours worked at each, report the Banquet, Conference, and Room Service Charges as undifferentiated lump sums, and state overtime, double-time, and meal premium amounts "derived from different regular rates, none of which reconciles to the stated hourly rates on the same statement." (*Id.* ¶ 77.)

Plaintiff alleges he and Class Members therefore "cannot determine from their wage statements whether they have been fully and correctly compensated," and that "[e]ach pay period in which Northwood issued a non-compliant wage statement constitutes a separate violation." (*Id.* ¶¶ 78, 80.) Plaintiff further alleges that the Putative Class Members are entitled to penalties pursuant to Labor Code § 226(e). (*Id.* ¶ 137.)

33. Thus, while Northwood completely denies Plaintiff is entitled to recover any wage statement penalties, based on the allegations in the Complaint, it is plausible that Plaintiff has placed over <u>$290,000.00</u> in controversy in connection with his wage statement claim ($50 per first wage statement x 134 Putative Class Members who worked during the one-year limitations period, plus $100 x 2,833 subsequent pay periods worked by Putative Class Members during the one-year limitations period, up to a maximum of $4,000 per Putative Class Member). (Price Decl. ¶ 8.) *See* Labor Code § 226(e)(1); *see also, e.g.*, *Lucas*, 2018 U.S. Dist. LEXIS 78510, at *25 (noting that "it is not unreasonable to assume that, with this many violations alleged by Plaintiff, every one of the wage statements issued during the one-year period could very likely have been noncompliant.").

**Failure to Timely Pay Wages at Termination (Seventh Cause of Action)**

34. The Complaint alleges that Northwood failed to pay Putative Class Members "all wages earned at the time of separation" and failed to pay "waiting time penalties for the full 30-day statutory period," in violation of Labor Code §§ 201, 202, and 203. (Compl. ¶¶ 82–83.) Plaintiff contends that separated Putative Class Members are entitled to a statutory penalty based on their daily wage rate running from their employment end date until 30 days thereafter. (*Id.* ¶ 143.)

35. Thus, while Northwood completely denies Plaintiff is entitled to recover any waiting time penalties, based on the allegations in the Complaint, it is plausible that Plaintiff has placed over <u>$539,568.00</u> in controversy in connection with the final pay claim (90 Putative Class Members who separated from employment with Northwood during the three-year limitations period x $24.98 average hourly rate x 8 hours x 30 days). (Price Decl. ¶¶ 7, 9.)

36. This calculation is further supported by the fact that Plaintiff has tied the waiting time penalties claim to Northwood's alleged failure to pay minimum and straight time wages, overtime premiums, meal and rest period premiums, and split-shift premiums. (Compl. ¶ 83.) As such, it is reasonable for Northwood to assume Plaintiff is seeking to recover the full amount of waiting time penalties for each Putative Class Member who separated between July 1, 2023 and the present. Further, the caselaw supports application of a 100% violation rate for alleged statutory violations, given that Plaintiff would only need to establish that each Putative Class Member was denied just one minute of hourly wages, one meal period premium, or one rest period premium during the limitations period.[5]

**Failure to Reimburse Necessary Business Expenses (Eighth Cause of Action)**

37. The Complaint alleges that Northwood "requires its employees to use their personal cellular telephones to perform their job duties without reimbursing them for that use," including to receive banquet and conference event assignments and to communicate with management regarding schedules and shift coverage, in violation of Labor Code § 2802. (Compl. ¶¶ 18, 63–64.) Plaintiff invokes *Cochran v. Schwan's Home Service, Inc.*

---

[5] *See Chavez v. Pratt (Robert Mann Packaging), L.L.C.*, No.19-cv-00719-NC, 2019 U.S. Dist. LEXIS 59399, at *9-10 (N.D. Cal. April 5, 2019) ("By tying the unpaid final wage claim to his other claims, [plaintiff] makes [defendant's] assumption of 100% violation for unpaid wages reasonable..."); *Kastler v. Oh My Greens, Inc.*, No. 19-cv-02411-HSG, 2019 U.S. Dist. LEXIS 185484, at *16 (N.D. Cal. Oct. 25, 2019) (approving 100% violation rate when calculating waiting time penalties because Plaintiff tied waiting time penalties claim to his other claims); *Mackall v. HealthSource Global Staffing, Inc.*, No. 16-cv-03810-WHO, 2016 U.S. Dist. LEXIS 119292, at *16-19 (N.D. Cal. Sep. 2, 2016) (upholding defendant's assumed 100% violation rate for waiting time penalties in CAFA removal where the complaint alleged overtime, meal period and rest break violations and a willful failure to timely pay final wages, and plaintiff failed to offer any alternative calculation in a lower amount); *Byrd v. Masonite Corp.*, No. EDCV 16-35 JGB (KKx), 2016 U.S. Dist. LEXIS 60078, at *9 (C.D. Cal. May 5, 2016) (Bernal, J.) (for derivative penalties which are based on a "laundry list" of other potential violations, it is reasonable for a removing defendant to assume a 100% violation rate for each terminated employee); *Bell v. Home Depot U.S.A., Inc.*, No. 2:12-cv-02499-GEB-CKD, 2014 U.S. Dist. LEXIS 78353, at *3 (E.D. Cal. June 5, 2014) ("These allegations of unpaid wages [including uncompensated overtime, meal period and rest period allegations] support Defendants' position that it is more likely than not that Plaintiffs' section 203 claim places in controversy 30-days of waiting time penalties…").

(2014) 228 Cal.App.4th 1137, 1144, for the proposition that an employer must reimburse a reasonable percentage of an employee's actual monthly cell phone bill whenever the employee is required to use a personal device for work, and asserts that Northwood reimbursed no portion of that cost. (*Id.* ¶ 64.)

38. Thus, while Northwood completely denies Plaintiff is entitled to recover reimbursement for any alleged business expenses, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least $15.00 in unreimbursed business expenses per workweek for all Putative Class Members, which would place over $344,715.00 in controversy in connection with his expense reimbursement claim ($15.00 average expenses x 22,981 workweeks). (Price Decl. ¶ 7.)

**Attorneys' Fees**

39. Plaintiff also seeks an unspecified amount of attorneys' fees in connection with his putative class claims for unpaid minimum and straight time wages, unpaid meal and rest period premiums, failure to provide accurate itemized wage statements, failure to reimburse business expenses, and unfair business practices. (Compl. ¶¶ 103, 134, Prayer for Relief ¶ 5.) The Court must consider and include these fees and costs in determining the amount in controversy. *Goldberg v. CPC Int'l, Inc.* 678 F.2d 1365, 1367 (9th Cir. 1982), cert. denied, 459 U.S. 945 (1982); *Galt G/S v. JSS Scandinavia* 142 F.3d 1150, 1155-56 (9th Cir. 1998); *Solorzano v. Alsco Inc.*, 2021 U.S. Dist. LEXIS 129517 at *3 (C.D. Cal. July 12, 2021) ("Future attorney's fees must be included in the amount in controversy.") (citations omitted).). Attorneys' fee awards in California wage-hour class actions can easily total several hundred thousands of dollars or more. *See, e.g., McGuigan v. City of San Diego*, 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million); *Pellegrino v. Robert Half Int'l, Inc.*, 182 Cal. App. 4th 278, 287, 296 (2010) (affirming $558,926.85 in attorneys' fees in exemption misclassification class case, but reversing as to multiplier); *Vasquez v. California*, 45 Cal. 4th 243, 249 (2008) (noting award of $435,000 in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties and waiting time penalties). Moreover, the Ninth Circuit recently concluded "that the amount

in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018); *see also Baker v. Tech Data Corp.*, 2022 U.S. Dist. LEXIS 66950 at *4 (C.D. Cal. Apr. 11, 2022) ("Recent estimates for the number of hours expended through trial for employment cases in this district have ranged from 100 to 300 hours."); *Lucas v. Michael Kors (USA) Inc.*, No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *32 (C.D. Cal. May 9, 2018) ("unaccrued post-removal attorneys' fees can be factored into the amount in controversy.").

40. "Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages." *Fong v. Regis Corp.*, No. C 13-04497 RS, 2014 U.S. Dist. LEXIS 275, at *23 (N.D. Cal. Jan. 2, 2014); *see also Herrera v. Carmax Auto Superstores Cal., L.L.C.*, No. EDCV-14-776-MWF (VBKx), 2014 U.S. Dist. LEXIS 188729, at *12 (C.D. Cal. June 12, 2014) ("Substantial authority supports a 'benchmark' 25 percent attorneys' fees figure to be added to any claim for which attorneys' fees are available."); *Hamilton v. Wal-Mart Stores, Inc.*, No. ED CV 17-01415-AB (KKx), 2017 U.S. Dist. LEXIS 162856, at *16 (C.D. Cal. Sep. 29, 2017) ("The Ninth Circuit has allowed an estimate fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA."); *Gutierrez v. Stericycle, Inc.*, No. LA CV15-08187 JAK (JEMx), 2017 U.S. Dist. LEXIS 20975, at *51 (C.D. Cal. Feb. 14, 2017) ("it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims.").

41. Thus, while Northwood completely denies Plaintiff is entitled to recover any damages or corresponding attorneys' fees, the Court should consider attorneys' fees of at least <u>$1,298,530</u> a conservative estimate at 25% of $5,194,120 – the combined amount in controversy calculated in Paragraphs 26 to 38 above in connection with Plaintiff's putative

class claims for unpaid minimum wages, unpaid meal period premiums, unpaid rest period premiums, unpaid expense reimbursements, wage statement violations, and failure to timely pay final wages. *See, e.g.*, *Oda v. Gucci Am., Inc.*, 2015 U.S. Dist. LEXIS 1672, at *11-13 (C.D. Cal. 2015) (finding the defendant's assumptions regarding attorneys' fees to be "reasonable" on removal where the defendant stated "Plaintiffs would recover a 25 percent fee" totaling "$1,329,245," based on "the amount in controversy before attorneys' fees" of "$5,316,978").

* * * * *

42. For the reasons discussed above, and without conceding or admitting to the underlying merit of Plaintiff's claims, but rather expressly denying all allegations set forth in the Complaint, it is plausible that the aggregate amount in controversy in connection with Plaintiff's putative class claims (at least <u>$6,492,650.00</u>) surpasses the $5,000,000 jurisdictional threshold required under CAFA. This figure does not include any value attributable to Plaintiff's overtime and double-time claim (Second Cause of Action), split-shift premium claim (Fifth Cause of Action), or the paid sick leave and reporting time pay allegations pleaded in the Complaint, all of which Northwood expressly reserves and none of which is necessary to satisfy the jurisdictional threshold.

## **<u>NOTICE TO ALL PARTIES AND STATE COURT</u>**

43. In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be served promptly on Plaintiff's counsel and filed with the Clerk of the Los Angeles County Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 will be followed and satisfied.

## **<u>NON-ADMISSION</u>**

44. Northwood denies each and every allegation set forth by Plaintiff in the Complaint and denies that any of Plaintiff's claims are appropriate for class or representative treatment. Northwood further denies that Plaintiff or any Putative Class Members are entitled to any compensatory or statutory damages, statutory penalties, civil penalties, injunctive relief, restitution, punitive damages, attorneys' fees, or any other relief. Notwithstanding the

above, removal of this action is proper given that removal is based on the allegations asserted in the Complaint.

**CONCLUSION**

45. Based on the foregoing, Northwood hereby removes the above-captioned action from the Los Angeles Superior Court to this Court based on CAFA requirements (28 U.S.C. §§ 1332(d), 1441, 1446 and 1453) and respectfully requests that this Court retain jurisdiction for all further proceedings.

Respectfully submitted,

Dated: August 17, 2026

JACKSON LEWIS P.C.

By: */s/ Jennifer Jambor-Delgado*
Eric J. Gitig
Jennifer Jambor-Delgado
Andrew J. Im

Attorneys for Defendant
NORTHWOOD HOSPITALITY LLC

4898-0418-4518, v. 1

# CERTIFICATE OF SERVICE

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CASE NAME:** ***Jacob Crabill v. Northwood Hospitality LLC, et al.***

**Case No.:**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 725 South Figueroa, Suite 2800, Los Angeles, California 90017.

On August 17, 2026, I caused the foregoing document(s) described as: **NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, and 1453,** to be served on all interested parties in this action as follows:

| | |
|---|---|
| Joseph Tojarieh, Esq.<br>STONEBROOK LAW<br>10250 Constellation Blvd., Ste. 2300<br>Los Angeles, CA 90067<br>Telephone: (310) 553-5533<br>E-mail: jft@stonebrookelaw.com | Attorneys for Plaintiff<br>JACOB CRABILL |

**[X]** **BY NOTICE OF ELECTRONIC FILING**. The above-listed counsel have consented to electronic service and have been automatically served by the Notice of Electronic Filing, which is automatically generated by CM/ECF at the time said document was filed, and which constitutes service pursuant to FRCP 5(b)(2)(E) and L.R. 5.4 (c)-(d).

**[X]** **FEDERAL:** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on August 17, 2026, at Los Angeles, California.

*/s/Marisol Valdez*
Marisol Valdez

4927-4535-2647, v. 1