Eric J. Gitig (SBN 307547)
Jennifer Jambor-Delgado (SBN 218363)
Andrew J. Im (SBN 351247)
JACKSON LEWIS P.C.
725 South Figueroa Street, Suite 2800
Los Angeles, California 90017-5408
Telephone: (213) 689-0404
Facsimile: (213) 689-0430
Eric.Gitig@jacksonlewis.com
Jennifer.Jambor-Delgado@jacksonlewis.com
Andrew.Im@jacksonlewis.com

Attorneys for Defendant
NORTHWOOD HOSPITALITY LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JACOB CRABILL, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

NORTHWOOD HOSPITALITY LLC, a Delaware limited liability company; and DOES 1 through 100, inclusive,

Defendants.

**CASE NO.:**

**DECLARATION OF JENNIFER JAMBOR-DELGADO IN SUPPORT OF DEFENDANT NORTHWOOD HOSPITALITY LLC'S NOTICE OF REMOVAL**

(Filed concurrently with Notice of Removal; Declaration of Tricia Price; Civil Case Cover Sheet; Certification and Notice of Interested Parties; and Corporate Disclosure Statement)

Complaint Filed: July 1, 2026

**DECLARATION OF JENNIFER JAMBOR-DELGADO**

I, Jennifer Jambor-Delgado, declare as follows:

1. I am an attorney duly licensed to practice law before all courts of the State of California and am admitted to practice before this Court. I am a Principal with the law firm of Jackson Lewis P.C., counsel of record for Defendant Northwood Hospitality LLC ("Northwood") in this action. I have personal knowledge of the facts set forth in this declaration, except as to those matters stated on information and belief, and as to those matters I am informed and believe them to be true. If called and sworn as a witness, I could and would competently testify to the matters set forth herein. I make this declaration in support of Northwood's Notice of Removal.

2. On July 1, 2026, Plaintiff Jacob Crabill ("Plaintiff") filed a putative Class Action Complaint against Northwood in the Superior Court of the State of California, County of Los Angeles, entitled *Jacob Crabill, individually and on behalf of all others similarly situated, Plaintiff, v. Northwood Hospitality LLC, a Delaware limited liability company; and Does 1 through 100, inclusive, Defendants*, and designated Case No. 26STCV21087, which sets forth the following nine causes of action: (1) failure to pay minimum wage; (2) failure to pay overtime compensation; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) failure to pay split-shift premiums; (6) failure to furnish timely and accurate wage statements; (7) waiting time penalties; (8) failure to indemnify for all necessary expenditures and losses; and (9) unfair competition (the "Complaint"). As stated in paragraph 84 of the Complaint, Plaintiff seeks to represent a putative class of Northwood's current and former California employees belonging to enumerated subclasses at any time from four years preceding the filing of the initial complaint in this action through the date of judgment. Two of the twelve subclasses identified in paragraph 84 are defined by shorter class periods corresponding to the applicable statutes of limitations for the wage statement and waiting time penalty claims, which are one year and three years, respectively.

3. Plaintiff served Northwood with a copy of the Summons and Complaint on

July 16, 2026. Attached hereto as Exhibit "A" are true and correct copies of the Summons, Complaint, and related court documents served on Northwood.

4. On August 12, 2026, Northwood filed and served an Answer to the Complaint in the Los Angeles County Superior Court, making a general denial as permitted by California Code of Civil Procedure section 431.30(d) and asserting various affirmative defenses. Attached hereto as Exhibit "B" is a true and correct copy of Northwood's Answer.

5. As of the date of this Declaration, Exhibit "A" and Exhibit "B" to this Declaration constitute all of the process, pleadings, and orders filed by or served on Northwood in this action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 17, 2026, at Los Angeles, California.

Dated: August 17, 2026 By: *<u>/s/ Jennifer Jambor-Delgado</u>*
JENNIFER JAMBOR-DELGADO

4898-1976-0071, v. 1

# EXHIBIT A

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

Electronically FILED by Superior Court of California, County of Los Angeles
7/01/2026 3:42 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By A. Zadorian, Deputy Clerk

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***

NORTHWOOD HOSPITALITY LLC, a Delaware limited liability company; and Does 1 through 100, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***

JACOB CRABILL, individually and on behalf of all others similarly situated,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡**AVISO!** Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Stanley Mosk Courthouse
111 North Hill Street
Los Angeles, California 90012

CASE NUMBER:
*(Número del Caso):*
26STCV21087

David W. Slayton, Executive Officer/Clerk of Court

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Joseph Tojarieh, Stonebrook Law, 10250 Constellation Blvd Ste 2300, Los Angeles, CA 90067 Tel: (310) 553-5533

DATE: 07/01/2026 *(Fecha)*  Clerk, by *(Secretario)* A. Zadorian, Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* NORTHWOOD HOSPITALITY LLC, a Delaware limited liability company

   under:
   - ☐ CCP 416.10 (corporation)
   - ☐ CCP 416.20 (defunct corporation)
   - ☒ CCP 416.40 (association or partnership)
   - ☐ CCP 416.60 (minor)
   - ☐ CCP 416.70 (conservatee)
   - ☐ CCP 416.90 (authorized person)
   - ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*



Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

JOSEPH TOJARIEH (SBN 265492)
jft@stonebrooklaw.com
STONEBROOK LAW
10250 Constellation Boulevard, Suite 2300
Los Angeles, California 90067
Tel: (310) 553-5533

Attorney for Plaintiff
JACOB CRABILL, individually and on behalf of all others similarly situated

Electronically FILED by
Superior Court of California,
County of Los Angeles
7/01/2026 3:42 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By A. Zadorian, Deputy Clerk

Stonebrook LAW

SUPERIOR COURT OF CALIFORNIA

COUNTY OF LOS ANGELES

JACOB CRABILL, individually and on behalf of all others similarly situated,

Plaintiff,

v.

NORTHWOOD HOSPITALITY LLC, a Delaware limited liability company; and Does 1 through 100, inclusive,

Defendants.

Case No. 26STCV21087

**Class Action Complaint for Damages and Injunctive and Declaratory Relief Based On:**

1. **Failure to Pay Minimum Wage (Cal. Lab. Code §§ 510, 1194, 1194.2, 1197, 1198; IWC Wage Order No. 5-2001; IWC Minimum Wage Order Nos. MW-2025 and MW-2026; West Hollywood Minimum Wage Ordinance)**
2. **Failure to Pay Overtime Compensation (Cal. Lab. Code §§ 510, 1194, and 1198; IWC Wage Order No. 5-2001)**
3. **Failure to Provide Meal Periods (Cal. Lab. Code §§ 226.7, 512, and 1198; IWC Wage Order No. 5-2001)**
4. **Failure to Provide Rest Periods (Cal. Lab. Code §§ 226.7 and 1198; IWC Wage Order No. 5-2001)**
5. **Failure to Pay Split-Shift Premiums (Cal. Lab. Code § 1198; IWC Wage Order No. 5-2001)**
6. **Failure to Furnish Timely and Accurate Wage Statements (Cal. Lab. Code §§ 226 and 1198; IWC Wage Order No. 5-2001)**
7. **Waiting Time Penalties (Cal. Lab. Code §§ 201, 202, and 203)**
8. **Failure to Indemnify for All Necessary Expenditures and Losses (Cal. Lab. Code § 2802; IWC Wage Order No. 5-2001)**
9. **Unfair Competition (Cal. Bus. & Prof. Code § 17200, et seq.)**

**DEMAND FOR JURY TRIAL**

Plaintiff Jacob Crabill complains and alleges on behalf of himself and all others similarly situated against Defendant Northwood Hospitality LLC ("Northwood") as follows:

## THE PARTIES

### Plaintiff

1. Mr. Crabill is, and at all relevant times was, an individual residing in Los Angeles County, California.

### Defendants

2. Northwood is, and at all relevant times was, a Delaware limited liability partnership doing business in Los Angeles County, California.

### Does

3. Mr. Crabill is unaware of the true names and capacities of the defendants sued herein as Does 1 through 100, inclusive, and, therefore, sues these defendants by such fictitious names. Mr. Crabill will amend this Complaint to allege the true names and capacities of such fictitiously named defendants when the same have been ascertained. Mr. Crabill is informed and believes and, on that basis, alleges that each fictitiously named defendant is responsible in some manner for the occurrences alleged herein and that Mr. Crabill's damages were proximately caused by their conduct.

### Agency

4. Mr. Crabill is informed and believes and, on that basis, alleges that at, all material times, each defendant was the agent, employee, partner, joint venture, co-conspirator, owner, principal, and employer of the remaining defendants, and is, and at all times herein mentioned was, acting within the course and scope of that agency, employment, partnership, conspiracy, ownership or joint venture. Mr. Crabill is further informed and believes and, on that basis, alleges that the acts and conduct alleged herein were known to, and authorized, directed, and/or ratified by, the officers, directors, and managing agents of the business entity defendants, and each of them.

## NATURE OF CLASS CLAIMS

### *Background on Northwood*

5. Northwood operates The London West Hollywood at Beverly Hills, a luxury hotel in West Hollywood, California. The hotel operates 24 hours a day, seven days a week, including a room

service operation staffed by in-house food and beverage employees.

***Background on Plaintiff's Employment***

6. Mr. Crabill is a current employee of Northwood's The London West Hollywood at Beverly Hills as an In-Room Dining and Room Service Server, a non-exempt hourly position. He initially worked for the hotel between 2013 and 2019. He returned and began working at the hotel again on approximately July 2, 2023.

7. Mr. Crabill's employment was governed by uniform company-wide policies and practices that resulted in unpaid minimum wages, unpaid overtime compensation, missed meal and rest periods, unpaid split-shift premiums, inaccurate payroll records and wage statements, and underpaid sick leave.

***Background on Northwood's Employment Practices Affecting Mr. Crabill and Class Members***

8. Northwood maintained uniform employment practices that applied to Mr. Crabill and Class Members. These practices systematically resulted in violations of the California Labor Code and applicable IWC Wage Orders.

9. Employees ordinarily record their time through the ADP timekeeping system, clocking in and out at the start and end of each shift. Northwood regularly requires its employees to work outside these shifts and such shifts fall outside that system. For example, Northwood does not pre-load banquet and conference events into ADP, so employees cannot clock in for them; those hours are recorded on paper and entered into ADP manually by a manager after the fact. When employees pick up additional shifts near the ADP payroll submission deadline for the period, they cannot clock in for those shifts either, and they likewise record those hours on paper for manual entry. When a manager does not enter an employee's paper-recorded hours, those hours do not appear in that period's paycheck, and when employees raise the discrepancy, managers tell them the hours will appear in a following pay period.

10. On occasions where employees work outside their regular shifts, Northwood's paystubs reflect two distinct regular rates of pay. Both rates of pay are simply marked as "REGULAR" earnings. On information and belief, the total daily and weekly hours are treated separately and, for working both an eight-hour shift and, for example, five banquet or conference

event hours, the employee is paid at a regular rate for all 13 hours that they worked.

11. Northwood schedules employees to work separate work segments within a single day that are divided by an unpaid, non-working interval that is not a bona fide meal or rest period. For example, an employee who works an overnight shift ending in the early morning may be scheduled to return the same day for a mandatory training or a later assignment, with an unpaid gap of several hours in between during which the employee is released from and then recalled to work.

12. Additionally, Northwood does not schedule meal periods or rest breaks on any shift. Its Team Member Handbook makes employees "responsible for scheduling their own meal period," subject to supervisor confirmation, and states that employees need no approval for rest breaks. Northwood provides no coverage or relief staffing to allow employees to step away from their duties. Moreover, Northwood does not train the managers to take food orders or operate the point-of-sale system, such that those managers cannot relieve employees of their service duties.

13. Employees' duties regularly prevent them from taking timely, uninterrupted meal and rest breaks. Room service employees must answer guest phones within three rings throughout their shifts and have no one to cover those duties during a break. On the overnight shift, although employees clock out for their meal period, they remain responsible for room service operations and continue working during the clocked-out period, including answering guest calls, taking orders, and making deliveries. Day shift employees regularly do not receive a meal break until or after 8:00 p.m. on shifts beginning at 2:30 or 3:30 p.m. When employees raise the issue, managers acknowledge the missed breaks but tell employees they should have asked for a break sooner, while also acknowledging that no one was available to provide coverage.

14. Northwood requires its employees to sign a written meal period waiver at the start of their employment. However, the waiver does not require a Northwood representative signing it, and the form contains no space for one. The effective date is also left blank.

15. Northwood does not provide meal periods or rest breaks during banquet or conference events, where food service must proceed without interruption and employees feel unable to request breaks given the demands of continuous event service. The gap between the end of an event and the start of the regular shift typically runs five to ten minutes and sometimes nothing at all; when a gap



Stonebrook LAW

exists, Northwood assigns employees to cleanup and breakdown work rather than relieving them of duty. Employees regularly work from the banquet start time through the end of the regular shift, a period of 13 hours or more, without any break.

16. Further, Northwood does not tell employees the rate at which their banquet or conference hours are paid. The paystubs display overtime, double-time, and meal premium pay calculated from different regular rates, none of which reconciles to the stated hourly rates on the same statement. They contain no named banquet or conference hourly rate. They report the Banquet Service Charge, Conference Service Charge, and Room Service Charge as undifferentiated lump-sum amounts. Northwood does not provide a separate itemized statement on how these charges are calculated either.

17. The Room Service Charge reflects an automatic charge of approximately 20% that Northwood adds to every room service order and distributes among employees. Northwood keeps the calculation and distribution methodology for the Room Service Charge, the Banquet Service Charge, and the Conference Service Charge in internal management records, discloses it to employees inconsistently, and provides no written breakdown from which employees can verify their share.

18. Northwood requires its employees to use their personal cellular telephones to perform their job duties without reimbursing them for that use. Employees must use their personal phones to, among other things, receive assignments and to communicate with management regarding their schedules and shift coverage. Northwood does not reimburse employees for any portion of the cost of using their personal phones for these work-related communications.

19. The foregoing practices are uniform, systemic, and arise from Northwood's centralized business model and operational decisions. These practices affected Mr. Crabill and Class Members.

***Failure to Pay Minimum and Straight Time Wages for All Hours Worked, Including Off-the-Clock and Unrecorded Time***

20. California law requires employers to pay employees for all hours worked, defined as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." (IWC Wage Order



Stonebrook LAW

Stonebrook LAW

No. 5-2001, § 2(K); *Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 578.) All hours worked must be paid no less than the applicable minimum wage. (Lab. Code §§ 1194, 1197, 1198; IWC Wage Order No. 5-2001, § 4.) An employer who fails to pay minimum wages is liable to the employee for the unpaid wages, liquidated damages in an equal amount, plus interest, attorney's fees, and costs. (Lab. Code §§ 1194(a), 1194.2.)

21. Northwood violated Labor Code sections 1194, 1194.2, 1197, and 1198, as well as the minimum wage provisions of IWC Wage Order No. 5-2001, by failing to compensate Mr. Crabill and Class Members for all hours worked at no less than the applicable minimum wage.

22. For example, when Mr. Crabill and Class Members pick up additional shifts near the ADP submission deadline, their hours are recorded on paper and dependent on manual manager entry. When that entry is not made, the hours are absent from the paycheck entirely for that period. On those occasions, employees work hours for which no wages are paid in the applicable pay period, constituting both an uncompensated wages violation and a late payment violation under Labor Code section 204.

23. To the extent Mr. Crabill and Class Members performed compensable work during unpaid meal periods, those minutes constitute hours worked for which no wages were paid.

24. The foregoing is not an exhaustive account of Northwood's minimum wage violations, and Mr. Crabill anticipates that additional violations will be revealed through further investigation and discovery.

25. By failing to compensate Mr. Crabill and Class Members for all hours worked, including time spent under Northwood's control as described above, Northwood violated Labor Code sections 1194, 1194.2, 1197, and 1198 and the minimum wage provisions of IWC Wage Order No. 5-2001.

***Failure to Pay Overtime Compensation***

26. An employer is required to pay time-and-one-half the employee's regular rate of pay for all hours over eight in a day, for the first eight hours worked on the seventh consecutive day of a workweek, and for all hours over 40 in a workweek, and double the regular rate for all hours over 12 in a day and for all hours over eight on the seventh consecutive day of a workweek. (Lab. Code §§

510(a), 1194, 1198; IWC Wage Order No. 5-2001, § 3.)

27. Northwood violated Labor Code sections 510, 1194, and 1198, as well as the overtime provisions of IWC Wage Order No. 5-2001, by failing to pay Mr. Crabill and Class Members the required overtime and double-time premiums for all hours triggering such compensation under the foregoing provisions.

28. For example, on days when Mr. Crabill and Class Members worked a banquet or conference event that ran into a regular shift, the combined hours worked in a single workday regularly exceed eight and frequently exceed 12. On information and belief, Northwood recorded and paid for these hours under two distinct regular rates of pay and failed to pay the overtime premiums due on the combined hours.

29. To the extent the Room Service Charge, the Banquet Service Charge, and Conference Service charges constitute mandatory service charges rather than voluntary gratuities, those amounts are nondiscretionary remuneration that must be accounted for in calculating the regular rate of pay for overtime and double-time. A mandatory charge that the customer is required to pay, added to the bill for service, is not a gratuity. (See DLSE Enforcement Policies and Interpretations Manual (rev. 2018) § 19.3.5.) Because Northwood reports these amounts as lump sums without disclosing the associated hours or rate, neither Mr. Crabill nor Class Members can determine whether Northwood incorporated them into the regular rate, and the records do not permit that determination.

30. Moreover, where an employee is paid at more than one rate in a single workweek, California law requires overtime to be calculated on a weighted-average blended regular rate, computed by dividing total straight-time compensation for all hours worked by total hours worked. (*Alvarado v. Dart Container Corp. of California* (2018) 4 Cal.5th 542, 548.) Northwood's wage statements reflect multiple regular rates and lump-sum distributions with no associated hours, none of which permits the blended regular rate to be calculated or verified from the face of the statement. The overtime, double-time, and meal premium amounts that do appear are derived from different regular rates, none of which reconciles to the stated hourly rates on the same statement, so the records do not establish that any premium was computed from the correct regular rate.

///



Stonebrook LAW

31. To the extent Mr. Crabill and Class Members worked more than 8 hours in a day and through their unpaid meal periods, those minutes constitute hours worked for which no overtime premiums were paid.

32. The foregoing is not an exhaustive account of Northwood's overtime violations, and Mr. Crabill anticipates that additional violations will be revealed through further investigation and discovery.

33. By engaging in the unlawful wage and hour practices above, including, but not limited to, failing to record and compensate all hours worked and failing to properly calculate overtime wages, Northwood violated Labor Code sections 510, 1194, and 1198 and the overtime provisions of IWC Wage Order No. 5-2001.

***Failure to Provide Legally Required Meal Periods***

34. Employees who work more than five hours in a workday must be provided a timely, duty-free meal period of at least 30 uninterrupted minutes before the fifth hour, and that employees who work more than ten hours must be provided a second duty-free meal period of at least 30 uninterrupted minutes before the end of the tenth hour of work. (Lab. Code §§ 226.7, 512, 1198; IWC Wage Order No. 5-2001, § 11.) Where a meal period is not provided, the employer must pay one additional hour of premium pay at the employee's regular rate of compensation. (Lab. Code § 226.7(c).)

35. Northwood violated Labor Code sections 226.7, 512, 1198, as well as the meal break provisions of IWC Wage Order No. 5-2001, by failing to provide Mr. Crabill and Class Members with timely, duty-free, uninterrupted meal periods as required, and by failing to pay the required premium compensation for each meal period that was not provided.

36. As explained above, Northwood's uniform policy delegates meal period scheduling entirely to Mr. Crabill and Class Members, with no employer-side coverage system, relief staffing, or operational mechanism to ensure that they can stop working for 30 uninterrupted minutes. Northwood's policy requires employees to self-schedule breaks while providing no employer-side infrastructure to ensure those breaks can be taken duty-free.

///



Stonebrook LAW

37. Northwood does not relinquish control over Mr. Crabill and Class Members' time during meal breaks. On the overnight shift, for example, Mr. Crabill and Class Members are required to clock out for their meal period but continue performing room service duties during that period, including answering guest calls, taking orders, and making deliveries. A meal period during which the employee continues to work and remains responsible for operations is not a duty-free meal period, and the employer remains obligated to pay both for the hours worked and the meal period premium. An employee subject to this continuing employer control during a purported meal period is not "off duty" within the meaning of the wage order. (See *Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257, 269-272 [interpreting the analogous "off duty" requirement for rest periods].)

38. Northwood does not afford a reasonable opportunity to take an uninterrupted 30-minute break. Northwood provides no coverage or relief staffing that would allow an employee to step away from their duties, and the managers on duty are not trained to take food orders or operate the point-of-sale system and so cannot relieve employees during a break. During the day shift, for example, Mr. Crabill and Class Members regularly do not receive a meal break until on or after 8:00 p.m. on shifts beginning at 2:30 or 3:30 p.m., well past the end of the fifth hour of work.

39. Northwood affirmatively impedes and discourages Mr. Crabill and Class Members from taking meal periods. When Mr. Crabill and Class Members raise the issue of missed breaks, managers tell them they should have asked for a break sooner, while acknowledging that no one was available to provide coverage. Moreover, the banquet manager schedules event assignments to run directly into the regular shift, so that Mr. Crabill and Class Members regularly work from the banquet start time through the end of the regular shift, a period of 13 hours or more, without any opportunity for a meal period. On those days, the combined work period also exceeds ten hours, triggering the second meal period obligation, for which Northwood provides no coverage and pays no premium.

40. The written meal period waiver Northwood obtains from Mr. Crabill and Class Members at the start of employment does not cure these violations. The waiver is defective on its face. A meal period waiver is an agreement between the employer and the employee, yet no Northwood representative signs the waiver, and the form contains no space for an employer signature. (Lab. Code § 512(a); IWC Wage Order No. 5-2001, § 11(A).) The effective date is also left



Stonebrook LAW

blank, making it impossible to tie the waiver to any specific pay period. A waiver that the employer never signs and never dates does not establish the mutual agreement that section 512(a) requires, and it cannot relieve Northwood of its obligation to provide compliant meal periods or to pay premium wages when it does not.

41. To the extent any agreement was presented as a condition of employment or was not freely revocable, it is independently invalid on those grounds.

42. Moreover, Northwood's own time records contain no meal period entries for shifts on which Mr. Crabill and Class Members worked banquet or conference events. Under California law, where an employer's records show no meal period for a shift exceeding five hours, a rebuttable presumption arises that the employee was not relieved of duty and no compliant meal period was provided. (*Donohue v. AMN Services, LLC* (2021) 11 Cal.5th 58, 74-76, adopting *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1052-1053 (conc. opn. of Werdegar, J.).) The burden falls on Northwood to rebut that presumption. Northwood cannot satisfy that burden by relying on its own incomplete records.

43. Northwood did not pay meal period premium wages of one additional hour at the employee's regular rate of compensation for each missed or non-compliant meal period, as required by Labor Code section 226.7(c).

44. To the extent that Northwood paid Mr. Crabill and Class Members a meal period premium, it failed to pay premium wages at the rate and frequency required by law, and the amount reflected is inconsistent with daily non-compliant meal periods. The meal premium that does appear is calculated from a regular rate that differs from the rates Northwood uses for its overtime and double-time calculations on the same statement, none of which reconciles to the stated hourly rates. Because the meal premium must be paid at the regular rate of compensation, including all nondiscretionary remuneration, Northwood's use of an inconsistent and unreconciled rate establishes that the premium was not correctly computed.

45. The foregoing is not an exhaustive account of Northwood's meal period violations, and Mr. Crabill anticipates that additional violations will be revealed through further investigation and discovery.



Stonebrook LAW

46. Northwood's failure to provide compliant meal periods and its failure to pay one additional hour of premium pay for each missed or non-compliant meal period violates Labor Code sections 226.7, 512 and 1198 and the meal period provisions of IWC Wage Order No. 5-2001.

***Failure to Authorize and Permit Rest Periods***

47. Employees must be authorized and permitted to take a paid, duty-free rest period of at least ten net minutes for every four hours worked, or major fraction thereof, as near the middle of each work period as practicable. Employees working shifts of more than ten hours are entitled to a third rest period. (Lab. Code § 226.7; IWC Wage Order No. 5-2001, § 12.) Unlike meal periods, there is no rest period waiver under California law.

48. Northwood violated Labor Code sections 226.7 and 1198, as well as the rest break provisions of IWC Wage Order No. 5-2001, by failing to authorize and permit Mr. Crabill and Class Members to take timely, duty-free rest periods as required, by failing to separately compensate for such rest periods, and by failing to pay the required premium compensation for each rest period that was not provided.

49. The same structural conditions that prevent compliant meal periods, including, but not limited to, the failure to schedule breaks, the absence of any coverage or relief staffing, managers who are not trained to take over service duties, the requirement that employees remain responsive to guest calls within three rings throughout their shifts, and event assignments scheduled to run directly into regular shifts, equally prevent Mr. Crabill and Class Members from taking compliant rest periods.

50. Northwood did not pay rest period premium wages of one additional hour at the employee's regular rate of compensation for each missed rest period, as required by Labor Code section 226.7(c).

51. The foregoing is not an exhaustive account of Northwood's rest period violations, and Mr. Crabill anticipates that additional violations will be revealed through further investigation and discovery.

///

///

52. By failing to authorize and permit legally compliant rest periods and by failing to pay the applicable premium wages, Northwood violated Labor Code sections 226.7 and 1198 and the rest period provisions of IWC Wage Order No. 5-2001.

***Failure to Pay Split-Shift Premiums***

53. When an employee works a split shift, meaning a work schedule interrupted by a non-paid, non-working period established by the employer other than a bona fide rest or meal period, the employee is entitled to one additional hour of pay at no less than the minimum wage, to the extent the premium is not offset by wages earned above the minimum wage for that day. (IWC Wage Order No. 5-2001, § 4(C); Lab. Code § 1198.)

54. Northwood violated Labor Code section 1198, as well as the minimum wage provisions of IWC Wage Order No. 5-2001, by failing to pay Mr. Crabill and Class Members a split shift premium for each instance that they were required to return to work.

55. Northwood scheduled Mr. Crabill and Class Members to work split shifts, including instances in which an employee was scheduled for a work segment separated from the employee's overnight shift by a non-working interval that was not a bona fide meal or rest period. Northwood's wage statements do not reflect the payment of any split-shift premium. To the extent the daily wages earned did not offset the required premium, Northwood failed to pay split-shift premiums owed. The extent of these violations cannot be determined from the wage statements alone and is the subject of further investigation.

56. The foregoing is not an exhaustive account of Northwood's split-shift violations, and Mr. Crabill anticipates that additional violations will be revealed through further investigation and discovery.

57. By failing to pay split-shift premiums owed, Northwood violated IWC Wage Order No. 5-2001, section 4(C), and Labor Code section 1198.

***Failure to Pay Paid Sick Leave at the Required Rate***

58. California law requires that paid sick leave be paid at the employee's regular rate of pay for the workweek in which the employee uses paid sick time, or by dividing the employee's total wages, not including overtime premium pay, by the employee's total hours worked in the full pay





Stonebrook LAW

periods of the prior 90 days of employment. (Lab. Code § 246(l).)

59. Northwood violated Labor Code sections 246 and 246.5 by paying Mr. Crabill and Class Members for sick leave at an incorrect, understated rate of pay rather than at the regular rate of pay required by law. As reflected in Northwood's own records, sick pay, along with vacation and holiday pay, was calculated using a lower rate than the rate to which the employee was entitled.

60. The foregoing is not an exhaustive account of Northwood's paid sick leave violations, and Mr. Crabill anticipates that additional violations will be revealed through further investigation and discovery.

61. By failing to pay paid sick leave at the required regular rate, Northwood violated Labor Code sections 246 and 246.5.

***Failure to Reimburse Business Expenses e***

62. Employers must indemnify employees for all necessary expenditures incurred in direct consequence of the discharge of their duties, and to provide or reimburse the cost of all tools and equipment required for work. (Lab. Code § 2802; IWC Wage Order No. 5-2001, § 9(B).)

63. Northwood violated Labor Code section 2802, as well as the indemnification and reimbursement provisions of IWC Wage Order No. 5-2001, by failing to indemnify Mr. Crabill and Class Members for all necessary expenditures incurred in direct consequence of the discharge of their duties and by failing to provide or reimburse the cost of all tools and equipment required for work.

64. For example, Northwood requires employees to use their personal phones to receive banquet and conference event assignments, and to communicate with management regarding their schedules and shift coverage. Under *Cochran v. Schwan's Home Service, Inc.* (2014) 228 Cal.App.4th 1137, 1144, an employer must reimburse a reasonable percentage of an employee's actual monthly cell phone bill whenever the employee is required to use a personal device for work. Northwood did not reimburse Mr. Crabill and Class Members for any portion of the cost of this required use.

65. The foregoing is not an exhaustive account of Northwood's failure to adequately indemnify and reimburse Mr. Crabill and Class Members, and Mr. Crabill anticipates that additional violations will be revealed through further investigation and discovery.



Stonebrook LAW

Stonebrook LAW

66. By failing to provide or reimburse the cost of all tools and equipment required for work, Northwood violated Labor Code section 2802 and IWC Wage Order No. 5-2001, section 9.

***Failure to Maintain Required Payroll Records***

67. Employers are required to maintain accurate records of the names and addresses of all employees, the hours worked daily by each employee and the wages paid to each employee, and to preserve such records for a period of not less than three years. (Lab. Code § 1174(d); IWC Wage Order No. 5-2001, § 7(A).)

68. Northwood violated Labor Code sections 1174(d) and 1198, as well as the employment records provisions of IWC Wage Order No. 5-2001, by failing to maintain accurate and complete records of the hours worked and wages paid to its Mr. Crabill and Class Members.

69. For example, banquet and conference hours are recorded on paper and entered into ADP manually by a manager after-the-fact, creating a gap between hours actually worked and hours reflected in the contemporaneous payroll record. The same is true of additional shifts picked up near the ADP submission deadline: when manual entry is not made, those hours do not appear in the payroll record at all for the relevant period. This paper-based process is inconsistent with Northwood's own policy requiring employees to clock in and out at the start and end of each shift, and it undermines the accuracy of the timekeeping record.

70. In addition, Northwood's records reflect that paid sick leave, vacation, and holiday pay were calculated and recorded using an incorrect, understated rate of pay, so that the wages recorded as paid did not reflect the wages actually owed.

71. Northwood's time records contain no meal period clock-outs or clock-ins for shifts on which employees worked banquet or conference events. This absence of meal period entries is a violation of section 1174(d) and IWC Wage Order No. 5-2001, section 7, independent of whether compliant meal periods were in fact provided. This recordkeeping failure also prevents any after-the-fact verification of meal period compliance and, as *Donohue v. AMN Services, LLC* (2021) 11 Cal.5th 58, 74-76 makes clear, precludes Northwood from relying on its own time records to establish that compliant meal periods were provided.

///

72. Where the Banquet Service Charge, Conference Service Charge, and Room Service Charge were, in fact, tips through a tip pool, Northwood failed to keep accurate records that were open for inspection, constituting both a record-keeping violation and a violation under Labor Code section 353.

73. The foregoing is not an exhaustive account of Northwood's failure to maintain accurate and complete employment records, and Mr. Crabill anticipates that additional violations will be revealed through further investigation and discovery.

74. By failing to maintain accurate and complete employment records, Northwood violated Labor Code section 1174(d) and IWC Wage Order No. 5-2001. These recordkeeping failures facilitated and concealed the wage payment and wage statement violations described herein. Accordingly, these recordkeeping failures constitute a violation of section 1198 (for failing to comply with the Labor Code and wage order provisions).

***Failure to Furnish Timely and Accurate Itemized Wage Statements***

75. Employers are required to provide employees with timely and accurate itemized wage statements for each pay period containing, among other items, gross wages earned, total hours worked, all applicable hourly rates and the hours worked at each rate, and net wages earned. (Lab. Code § 226(a); IWC Wage Order No. 5-2001, § 7.)

76. Northwood violated Labor Code sections 226 and 226.3, as well as the wage statement provisions of IWC Wage Order No. 5-2001, by failing to provide Mr. Crabill and Class Members with timely and accurate itemized wage statements containing all required information.

77. The central purpose of section 226(a) is to allow an employee to determine, from the face of the wage statement, whether and how they have been correctly paid. Northwood's wage statements do not permit that determination. The wage statements reflect two distinct regular pay rates without establishing the basis for each or the total hours worked at each. They report the Banquet Service Charge, Conference Service Charge, and Room Service Charge as undifferentiated lump-sum amounts, and nothing on the statement allows an employee to confirm whether, or at what rate, their banquet and conference hours were separately compensated, or to verify how those distributions were calculated. The overtime, double-time, and meal premium amounts are derived

Stonebrook LAW

from different regular rates, none of which reconciles to the stated hourly rates on the same statement. Paid sick leave, vacation, and holiday pay were calculated using an incorrect, understated rate, so that the wages stated did not reflect the wages owed. Also, where Northwood corrected a wage underpayment by issuing a manual check outside its ADP payroll system, that corrective payment appeared on no itemized wage statement.

78. As a result, Mr. Crabill and Class Members cannot determine from their wage statements whether they have been fully and correctly compensated, frustrating the transparency purposes of Labor Code section 226.

79. The foregoing is not an exhaustive account of Northwood's failure to provide timely and accurate itemized wage statements, and Mr. Crabill anticipates that additional violations will be revealed through further investigation and discovery.

80. Each pay period in which Northwood issued a non-compliant wage statement constitutes a separate violation, giving rise to civil penalties under section 226.3.

***Failure to Pay All Wages Due Upon Separation***

81. Employers must timely pay all wages earned at the time of separation. An involuntarily terminated employee must be paid all final wages immediately upon termination, and an employee who resigns without notice must be paid within 72 hours of separation. (Lab. Code §§ 201, 202.) An employer who willfully fails to timely pay final wages is liable for waiting time penalties equal to the employee's daily rate of pay for each day the wages remain unpaid, up to a maximum of 30 days. (Lab. Code § 203.)

82. Northwood violated Labor Code sections 201, 202, and 203, by failing to pay Mr. Crabill and separated Class Members all wages earned at the time of separation and by failing to pay waiting time penalties for the full 30-day statutory period.

83. Because Northwood failed to pay all wages owed as described above, including unpaid minimum and straight time wages, unpaid overtime premiums, meal and rest period premium wages, and split-shift premiums, Mr. Crabill and Class Members who separated from Northwood's employment did not receive all wages due at the time of their separation, and Northwood failed to pay waiting time penalties for the full 30-day statutory period. Northwood's practices violate Labor



Stonebrook LAW

Code sections 201, 202, and 203.

## CLASS ACTION ALLEGATIONS

The Class

84. Mr. Crabill brings this action individually and on behalf of all other similarly situated individuals ("Class Members") belonging to one or more of the following subclasses:

- **Unpaid Wages Subclass:** Northwood's current and former California employees who, at any time from four years preceding the filing of the initial complaint in this action to the date of judgment, performed work for which they were not paid all compensation owed, including minimum wage, straight time, and overtime.
- **Minimum Wage Subclass**: Northwood's current and former California employees who, at any time from four years preceding the filing of the initial complaint in this action to the date of judgment, were not paid the applicable state or local minimum wage for all hours worked.
- **Overtime and Double Time Subclass:** Northwood's current and former California employees who, at any time from four years preceding the filing of the initial complaint in this action to the date of judgment, worked in excess of 8 hours in a workday, 40 hours in a workweek, or 7 consecutive days in a workweek without receiving all legally required overtime compensation at 1.5 times their regular rate of pay, or double their regular rate of pay for all hours worked in excess of 12 hours in a workday or in excess of 8 hours on the seventh consecutive day of a workweek.
- **Meal Period Subclass:** Northwood's current and former California employees who, at any time from four years preceding the filing of the initial complaint in this action to the date of judgment, worked a shift in excess of 5 hours without receiving one legally compliant meal period of at least 30 minutes for every 5 hours worked, with each such meal period commencing no later than the end of the employee's fifth consecutive hour of work for that meal period interval.
- **Rest Period Subclass:** Northwood's current and former California employees who, at any time from four years preceding the filing of the initial complaint in this action to



Stonebrook LAW

the date of judgment, worked a shift of 3.5 hours or more without receiving one legally compliant, duty-free rest period of at least 10 minutes for every 4 hours worked, or major fraction thereof.

- **Split-Shift Premium Subclass**: Northwood's current and former California employees who, at any time from four years preceding the filing of the initial complaint in this action to the date of judgment, worked a split shift without receiving one hour of pay at no less than the minimum wage.
- **Reporting Time Pay Subclass**: Northwood's current and former California employees who, at any time from four years preceding the filing of the initial complaint in this action to the date of judgment, worked less than half of the employee's usual or scheduled day's work without receiving two hours of reporting time pay at the regular rate of pay.
- **Business Expense Reimbursement and Indemnification Subclass:** Northwood's current and former California employees who, at any time from four years preceding the filing of the initial complaint in this action to the date of judgment, incurred necessary expenditures or losses, or were exposed to claims, demands, or liabilities, in direct consequence of the discharge of their job duties or in obedience to the directions of Defendants, and were not fully reimbursed or indemnified therefor.
- **Wage Statement Subclass**: Northwood's current and former California employees who, at any time from one year preceding the filing of the initial complaint in this action to the date of judgment, did not receive timely and accurate itemized wage statements in accordance with California Labor Code section 226.
- **Waiting Time Penalties Subclass**: Northwood's current and former California employees who, at any time from three years preceding the filing of the initial complaint in this action to the date of judgment, were not paid all wages owed immediately upon discharge or within 72 hours of resignation.
- **Paid Sick Leave Subclass:** Northwood's current and former California employees who, at any time from four years preceding the filing of the initial complaint in this



Stonebrook LAW

action to the date of judgment, were subject to Northwood's unlawful leave practices and were not permitted to accrue, use, or receive paid sick leave benefits at the required rate of pay.

- **Sick Leave Notice Subclass:** Northwood's current and former California employees who, at any time from four years preceding the filing of the initial complaint in this action to the date of judgment, were not provided accurate notice of paid sick leave rights and balances at the required rate of pay.

85. Mr. Crabill reserves the right to amend or modify the class description with greater specificity or further division into subclasses or limitation to particular issues.

<u>Numerosity</u>

86. The Class Members are sufficiently numerous that joinder of each Class Member would be impracticable, and the disposition of their claims in a class action, rather than in numerous individual actions, will benefit the parties, the Court, and the interests of justice.

87. Accounting for employee turnover during the relevant time period necessarily increases this number. Northwood's employment records will provide information as to the number and location of all Class Members.

<u>Typicality</u>

88. Mr. Crabill's claims are typical of the claims of other Class Members. Mr. Crabill and other Class Members sustained injuries and damages arising out of and caused by Northwood's common course of conduct in violation of laws, regulations that have the force and effect of law, and statutes as alleged herein.

<u>Commonality</u>

89. There is a well-defined community of interest in the questions of law and fact involving all Class Members in that Northwood treated Class Members uniformly. Common questions of law and fact predominate over questions that affect only individual Class Members.

<u>Superiority</u>

90. A class action is superior to other available means for the fair and efficient adjudication of this controversy. Because individual joinder of all Class Members is impractical, class



Stonebrook LAW

action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. The expenses and burdens of individual litigation would make it difficult or impossible for individual Class Members to redress the wrongs done to them, while important public interests will be served by addressing the matter as a class action. The cost to and burden on the court system of adjudication of individualized litigation would be substantial, and substantially more than the costs and burdens of a class action. Individualized litigation would also present the potential for inconsistent or contradictory judgments.

<u>Adequacy</u>

91. Mr. Crabill and his counsel will fairly and adequately protect the interests of other Class Members. Mr. Crabill has no interests that are adverse to the interests of other Class Members.

**<u>FIRST CAUSE OF ACTION</u>**

**Failure to Pay Minimum Wage**

**(Cal. Labor Code Sections 510, 1194, 1194.2, 1197, 1198; IWC Wage Order No. 5-2001; IWC Minimum Wage Order Nos. MW-2025 and MW-2026; West Hollywood Minimum Wage Ordinance)**

(By Mr. Crabill, Individually and on Behalf of All Class Members, Against Defendant and Does 1 Through 100)

92. Mr. Crabill re-alleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

93. Labor Code section 1198 makes it unlawful for an employer to employ an employee for longer hours than those fixed by the Industrial Welfare Commission Wage Orders or under conditions of labor prohibited by Industrial Welfare Commission Wage Orders.

94. Industrial Welfare Commission Wage Order No. 5-2001, section 4, provides in pertinent part the following:

> 4. MINIMUM WAGES
> (A) Every employer shall pay to each employee wages not less than the following:
> (1) Any employer who employs 26 or more employees shall pay to each employee wages not less than the following:

> (a) Ten dollar and fifty cents ($10.50) per hour for all hours worked, effective January 1, 2017;
> (b) Eleven dollars ($11.00) per hour for all hours worked, effective January 1, 2018....

95. California Labor Code section 1194 provides in pertinent part the following:

> 1194. (a) Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

96. California Labor Code section 1194.2 provides in pertinent part the following:

> 1194.2. (a) In any action under Section 98, 1193.6, 1194, or 1197.1 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission or by statute, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

97. California Labor Code section 1197 provides in pertinent part the following:

> 1197. The minimum wage for employees fixed by the commission or any applicable state or local law, is the minimum wage to be paid to employees, and the payment of a lower wage than the minimum so fixed is unlawful.

98. California Minimum Wage Order MW-2025 states that, for labor performed from January 1, 2022 to December 31, 2022, for employers with 26 or more employees, the minimum wage is $14.00 per hour; and, for employers with 25 or fewer employees, the minimum wage is $15.00 per hour. For labor performed from January 1, 2023 to December 31, 2023, the minimum wage is $15.50 per hour. For labor performed from January 1, 2024 to December 31, 2024, the minimum wage is $16.00 per hour. For labor performed from January 1, 2025 to December 31, 2025, the minimum wage is $16.50 per hour.

99. California Minimum Wage Order MW-2026 states that for labor performed from January 1, 2026 to December 31, 2026, the minimum wage is $16.90 per hour.

100. The West Hollywood Minimum Wage Ordinance states that, for hotel workers, for labor performed from January 1, 2022 to June 30, 2022, the minimum wage is $17.64 per hour. For

labor performed from July 1, 2022 to June 30, 2023, the minimum wage is $18.31; for labor performed from July 1, 2023 to June 30, 2024, the minimum wage is $18.77. For labor performed from July 1, 2024 to June 30, 0, the minimum wage is $19.61; for labor performed from July 1, 2025 to June 30, 2026, the minimum wage is $20.22; and for labor performed from July 1, 2026 to June 30, 2027, the minimum wage is $20.87.

101. In addition to the California minimum wage set forth in the Industrial Welfare Commission Wage Orders and Minimum Wage Orders, numerous cities and counties within California have enacted local minimum wage ordinances that establish minimum wage rates higher than the state minimum wage, including but not limited to, West Hollywood. Where an employee performs work within a jurisdiction that has adopted a local minimum wage ordinance, the employer is required to pay the employee the applicable local minimum wage rate if it exceeds the state minimum wage. An employer's failure to pay the highest applicable minimum wage for all hours worked violates California Labor Code sections 1194, 1197, and 1198, applicable Industrial Welfare Commission Wage Orders, and the relevant local minimum wage ordinances.

102. At relevant times herein, Northwood intentionally failed to pay Mr. Crabill and Class Members minimum wages required by law, including overtime compensation at the minimum wage rate.

103. Mr. Crabill and Class Members are entitled to recover their earned wages at the minimum wage rate, interest thereon, and reasonable attorney fees and costs. Pursuant to Labor Code section 1194.2, Mr. Crabill and Class Members are also entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

104. As a direct and proximate result of the aforementioned acts and omissions, Mr. Crabill and Class Members have sustained damages in excess of the jurisdictional minimum of this Court, plus interest thereon at the maximum legal rate.

///

///

///

**SECOND CAUSE OF ACTION**

**Failure to Pay Overtime Compensation**

**(California Labor Code Sections 510, 1194, and 1198; IWC Wage Order No. 5-2001)**

(By Mr. Crabill, Individually and on Behalf of All Class Members, Against Defendant and Does 1 Through 100)

105. Mr. Crabill re-alleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

106. Labor Code section 1198 makes it unlawful for an employer to employ an employee for longer hours than those fixed by the Industrial Welfare Commission Wage Orders or under conditions of labor prohibited by Industrial Welfare Commission Wage Orders.

107. Industrial Welfare Commission Wage Order No. 5-2001, section 3, provides in pertinent part the following:

> 3. HOURS AND DAYS OF WORK
> (A) Daily Overtime - General Provisions
> (1) … employees shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (11/2) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek. Eight (8) hours of labor constitutes a day's work. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime at not less than:
> (a) One and one-half (11/2) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek; and
> (b) Double the employee's regular rate of pay for all hours worked in excess of 12 hours in any workday and for all hours worked in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek.

108. California Labor Code section 510 provides in pertinent part the following:

> 510. (a) Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any



Stonebrook LAW

> seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee....

109. California Labor Code section 1194 provides in pertinent part the following:

> 1194. (a) Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

110. At relevant times herein, Northwood failed to pay Mr. Crabill and Class Members overtime compensation.

111. As a direct and proximate result of the aforementioned acts and omissions, Mr. Crabill and Class Members have sustained damages in excess of the jurisdictional minimum of this Court, plus interest thereon at the maximum legal rate.

## <u>THIRD CAUSE OF ACTION</u>

### Failure to Provide Meal Periods

**(California Labor Code Sections 226.7, 512, and 1198; IWC Wage Order No. 5-2001)**

(By Mr. Crabill, Individually and on Behalf of All Class Members, Against Defendant and Does 1 Through 100)

112. Mr. Crabill re-alleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

113. Labor Code section 1198 makes it unlawful for an employer to employ an employee for longer hours than those fixed by the Industrial Welfare Commission Wage Orders or under conditions of labor prohibited by Industrial Welfare Commission Wage Orders.

114. Industrial Welfare Commission Wage Order No. 5-2001, section 11, provides in pertinent part the following:

> 11. MEAL PERIODS
> (A) No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes....
> (B) If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not



Stonebrook LAW

provided.

115. California Labor Code section 512 provides in pertinent part the following:

> 512. (a) An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

116. California Labor Code section 226.7 provides in pertinent part the following:

> 226.7....(c) If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided.

117. At relevant times herein, Northwood caused Mr. Crabill and Class Members to work for periods of more than five hours without a meal period of at least 30 minutes.

118. Mr. Crabill and Class Members were not paid an additional hour of pay at the regular rate of compensation in lieu of the mandated meal period required by the Labor Code.

119. As a direct and proximate result of the aforementioned acts and omissions, Mr. Crabill and Class Members have sustained damages in excess of the jurisdictional minimum of this Court, plus interest thereon at the maximum legal rate.

**<u>FOURTH CAUSE OF ACTION</u>**

**Failure to Provide Rest Periods**

**(California Labor Code Sections 226.7 and 1198; IWC Wage Order No. 5-2001)**

(By Mr. Crabill, Individually and on Behalf of All Class Members, Against Defendant and Does 1 Through 100)

120. Mr. Crabill re-alleges and incorporates by reference the allegations in the preceding

paragraphs as if fully set forth herein.

121. Labor Code section 1198 makes it unlawful for an employer to employ an employee for longer hours than those fixed by the Industrial Welfare Commission Wage Orders or under conditions of labor prohibited by Industrial Welfare Commission Wage Orders.

122. California Labor Code section 226.7 provides in pertinent part the following:

> 226.7….(c) If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided.

123. Industrial Welfare Commission Wage Order No. 5-2001, section 12, provides in pertinent part the following:

> 12. REST PERIODS
> (A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 ½) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.
> (B) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided.

124. At relevant times herein, Northwood caused Mr. Crabill and Class Members to work for periods of more than four hours or major fraction thereof without rest periods of at least 10 minutes.

125. Mr. Crabill and Class Members were not paid an additional hour of pay at the regular rate of compensation in lieu of the mandated rest period required by the Labor Code.

126. As a direct and proximate result of the aforementioned acts and omissions, Mr. Crabill and Class Members have sustained damages in excess of the jurisdictional minimum of this Court, plus interest thereon at the maximum legal rate.



Stonebrook LAW

Stonebrook LAW

## FIFTH CAUSE OF ACTION

**Failure to Pay Split-Shift Premiums**

**(California Labor Code Section 1198; IWC Wage Order No. 5-2001)**

(By Mr. Crabill, Individually and on Behalf of All Class Members, Against Defendant and Does 1 Through 100)

127. Mr. Crabill re-alleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

128. Labor Code section 1198 makes it unlawful for an employer to employ an employee for longer hours than those fixed by the Industrial Welfare Commission Wage Orders or under conditions of labor prohibited by Industrial Welfare Commission Wage Orders.

129. Industrial Welfare Commission Wage Order No. 5-2001, section 4, provides in pertinent part the following:

> 4. MINIMUM WAGES
> (C) When an employee works a split shift, one hour's pay at the minimum wage shall be paid in addition to the minimum wage for that workday, except when the employee resides at the place of employment....

130. At relevant times herein, Northwood failed to pay Mr. Crabill and Class Members a split shift premium for each instance that they worked a split shift.

131. As a direct and proximate result of the aforementioned acts and omissions, Mr. Crabill and Class Members have sustained damages in excess of the jurisdictional minimum of this Court, plus interest thereon at the maximum legal rate.

## SIXTH CAUSE OF ACTION

**Failure to Furnish Timely and Accurate Wage Statements**

**(California Labor Code Sections 226 and 1198; IWC Wage Order No. 5-2001)**

(By Mr. Crabill, Individually and on Behalf of All Class Members, Against Defendant and Does 1 Through 100)

132. Mr. Crabill re-alleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

133. Labor Code section 1198 makes it unlawful for an employer to employ an employee for longer hours than those fixed by the Industrial Welfare Commission Wage Orders or under conditions of labor prohibited by Industrial Welfare Commission Wage Orders.

134. California Labor Code section 226 provides in pertinent part the following:

> 226. (a) Every employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee…an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer… and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee….
>
> (e) (1) An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

135. Industrial Welfare Commission Wage Order No. 5-2001, section 7, provides in pertinent part the following:

> 7. RECORDS
>
> …
>
> (B) Every employer shall semimonthly or at the time of each payment of wages furnish each employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately, an itemized statement in writing showing: (1) all deductions; (2) the inclusive dates of the period for which the employee is paid; (3) the name of the employee or the employee's social security number; and (4) the name of the employer, provided all deductions made on written orders of the employee may be aggregated and shown as one item….

136. At relevant times herein, Northwood knowingly and intentionally failed to furnish Mr. Crabill and Class Members with timely and compliant wage statements.

137. Pursuant to Labor Code section 226(e), Mr. Crabill and Class Members are entitled to

recover the greater of all actual damages or a statutory penalty equal to $50 for the initial pay period in which the wage statement violation occurred and $100 for each violation in a subsequent pay period, up to a total of $4,000.

138. Northwood's conduct also entitles Mr. Crabill and Class Members to seek preliminary and permanent injunctive relief, including, but not limited to, an order that Northwood's issue wage and hour statements to their workers that comply with Labor Code section 226.

139. As a direct and proximate result of the aforementioned acts and omissions, Mr. Crabill and Class Members have sustained damages in excess of the jurisdictional minimum of this Court, plus interest thereon at the maximum legal rate.

**SEVENTH CAUSE OF ACTION**

**Waiting Time Penalties**

**(California Labor Code Sections 201, 202, and 203)**

(By Mr. Crabill, Individually and on Behalf of All Class Members, Against Defendant and Does 1 Through 100)

140. Mr. Crabill re-alleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

141. California Labor Code sections 201 through 203 provide in pertinent part the following:

> 201. (a) If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately….
>
> 202. (a) If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting…
>
> 203. (a) If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days….

142. At relevant times herein, Northwood willfully failed to pay Mr. Crabill and Class



Stonebrook LAW

Members who have separated from Northwood earned wages immediately upon discharge or within 72 hours of resignation.

143. Pursuant to Labor Code section 203(a), Mr. Crabill and separated Class Members are entitled to a statutory penalty based on Mr. Crabill and separated Class Members' daily wage rate starting from Mr. Crabill and separated Class Members' employment end date until 30 days from Mr. Crabill and separated Class Members' employment end date.

144. As a direct and proximate result of the aforementioned acts and omissions, Mr. Crabill and separated Class Members have sustained damages in excess of the jurisdictional minimum of this Court, plus interest thereon at the maximum legal rate.

## EIGHTH CAUSE OF ACTION

**Failure to Indemnify for All Necessary Expenditures and Losses**

**(California Labor Code Section 2802; IWC Wage Order No. 5-2001)**

(By Mr. Crabill, Individually and on Behalf of All Class Members, Against Defendant and Does 1 Through 100)

145. Mr. Crabill re-alleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

146. California Labor Code section 2802 provides in pertinent part the following:

> 2802. (a) An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.
> ...

147. Industrial Welfare Commission Wage Order No. 5-2001 section 9(B) provides in pertinent part the following:

> (B) When tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft. ...



Stonebrook LAW

148. At relevant times herein, Northwood failed to indemnify Mr. Crabill and Class Members for all necessary expenditures and losses incurred in direct consequence of the discharge of Mr. Crabill and Class Members' duties or of Mr. Crabill and Class Members' obedience to Northwood's directions.

149. As a direct and proximate result of the aforementioned acts and omissions, Mr. Crabill and Class Members have sustained damages in excess of the jurisdictional minimum of this Court, plus interest thereon at the maximum legal rate.

**NINTH CAUSE OF ACTION**

**Unfair Competition**

**(California Business & Professions Code Section 17200, et seq.)**

(By Mr. Crabill, Individually and on Behalf of All Class Members, Against Defendants and Does 1 Through 100)

150. Mr. Crabill re-alleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

151. Northwood's above violations constitute unfair business practices in violation of the UCL.

152. Mr. Crabill and Class Members have suffered injury in fact and have lost money or property as a result of Northwood's unfair business practices, and Northwood have reaped unfair benefits and illegal profits at the expense of Mr. Crabill and Class Members.

153. Mr. Crabill and Class Members are thus entitled to declaratory and equitable relief, including, but not limited to, restitution of all amounts owing to Mr. Crabill and Class Members.

154. Additionally, Northwood's unfair business practices entitle Mr. Crabill and Class Members to seek preliminary and permanent injunctive relief.

WHEREFORE, Mr. Crabill prays for judgment against Defendants as follows:

1. For compensatory damages, in an amount according to proof.
2. For all statutory and civil penalties authorized by law.
3. For restitution of all wrongfully withheld amounts and disgorgement of all ill-gotten

profits, in an amount according to proof.

4. For preliminary and permanent injunctive relief requiring Defendants to cease and desist from further unfair competition and to bring Defendants in compliance with the aforementioned laws.

5. For attorney fees and costs pursuant to all applicable provisions of law.

6. For costs of suit incurred herein.

7. For prejudgment interest.

8. For such other relief as the court may deem proper.

STONEBROOK LAW

Dated: July 1, 2026

By: ______________________

JOSEPH TOJARIEH
Attorney for Plaintiff
JACOB CRABILL, individually and on behalf of all others similarly situated

**DEMAND FOR JURY TRIAL**

Mr. Crabill demands a trial by jury.

Dated: July 1, 2026

STONEBROOK LAW

By: ______________________

JOSEPH TOJARIEH
Attorney for Plaintiff
JACOB CRABILL, individually and on behalf of all others similarly situated



Stonebrook LAW

# EXHIBIT B

Eric J. Gitig (SBN 307547)
Jennifer Jambor-Delgado (SBN 218363)
Andrew J. Im (SBN 351247)
JACKSON LEWIS P.C.
725 South Figueroa Street, Suite 2800
Los Angeles, California 90017-5408
Telephone: (213) 689-0404
Facsimile: (213) 689-0430
Eric.Gitig@jacksonlewis.com
Jennifer.Jambor-Delgado@jacksonlewis.com
Andrew.Im@jacksonlewis.com

Attorneys for Defendant
NORTHWOOD HOSPITALITY LLC

**Electronically FILED by Superior Court of California, County of Los Angeles 8/12/2026 1:21 PM David W. Slayton, Executive Officer/Clerk of Court, By M. Strano, Deputy Clerk**

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

| | |
|---|---|
| JACOB CRABILL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>NORTHWOOD HOSPITALITY LLC, a Delaware Limited Liability Company, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 26STCV21087<br><br>[Assigned for all purposes to Hon. Theresa M. Traber, Dept. 1, Spring St. Courthouse]<br><br>**CLASS AND PAGA ACTION**<br><br>**DEFENDANT NORTHWOOD HOSPITALITY LLC'S ANSWER TO PLAINTIFF JACOB CRABILL'S CLASS ACTION COMPLAINT**<br><br>Complaint filed: July 1, 2026 |

**TO THE HONORABLE COURT, PLAINTIFF JACOB CRABILL, AND PLAINTIFF'S ATTORNEYS OF RECORD:**

Defendant NORTHWOOD HOSPITALITY LLC ("Defendant"), on behalf of itself and for no other entity or individual, hereby responds to the unverified Class Action Complaint ("Complaint") filed by Plaintiff JACOB CRABILL ("Plaintiff"), as follows:

**GENERAL DENIAL**

Under the provisions of Code of Civil Procedure § 431.30(d), Defendant denies, generally and specifically, each and every allegation contained in the Complaint. Defendant further denies, generally and specifically, that Plaintiff and/or any other individual he purports to represent in this action (collectively, "putative class members") have suffered any injury or been damaged in any sum whatsoever by reason of any act or omission on the part of Defendant, or any of its past or present agents, representatives, or employees.

**AFFIRMATIVE DEFENSES**

Defendant has not completed its investigation of the facts of this case, has not completed discovery in this matter, and has not completed its preparation for trial. The affirmative defenses asserted herein are based on Defendant's knowledge, information and belief at this time, and Defendant specifically reserves the right to modify, amend or supplement any affirmative defense contained herein at any time. Without conceding that it bears the burden of proof or persuasion as to any one of these, Defendant alleges the following defenses to the Complaint:

**FIRST AFFIRMATIVE DEFENSE**

**(Failure to State a Claim)**

1. The Complaint as a whole, and each purported cause of action alleged therein, fails to state facts sufficient to constitute a cause of action against Defendant upon which relief may be granted.

**SECOND AFFIRMATIVE DEFENSE**

**(Statute of Limitations)**

2. The Complaint is barred, in whole or in part, by the applicable statute of limitations including, but not limited to California Code of Civil Procedure sections 337, 338, 339, 340, and 343, California Labor Code sections 203(b), and California Business and Professions Code section 17208.

**THIRD AFFIRMATIVE DEFENSE**

**(Waiver and Release)**

3. Some or all of Plaintiff's claims are barred, in whole or in part, to the extent such claims have been waived, discharged, or released.

/ / /

**FOURTH AFFIRMATIVE DEFENSE**

**(Equitable Defenses)**

4. The Complaint is barred, in whole or in part, by the doctrines of laches, estoppel, waiver, and unclean hands.

**FIFTH AFFIRMATIVE DEFENSE**

**(Avoidable Consequences Doctrine)**

5. The Complaint is barred, in whole or in part, under the avoidable consequences doctrine. Defendant had procedures in place for reporting work-related issues, including, but not limited to, issues related to timekeeping, meal periods, and rest periods. Plaintiff and putative class members unreasonably failed to utilize Defendant's preventive and corrective measures, and reasonable use of Defendant's preventive and corrective measures would have prevented at least some of the harm Plaintiff and putative class members allegedly suffered.

**SIXTH AFFIRMATIVE DEFENSE**

**(All Due Compensation Paid)**

6. The Complaint is barred, in whole or in part, because Plaintiff and putative class members have been paid all income, compensation and pay to which they have ever been entitled to under the California Labor Code and the applicable orders of the Industrial Welfare Commission.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Accord and Satisfaction)**

7. The Complaint is barred, in whole or in part, to the extent Plaintiff and putative class members entered into an accord and satisfaction of any claim asserted in this lawsuit.

**EIGHTH AFFIRMATIVE DEFENSE**

**(Adequate Remedy at Law)**

8. Plaintiff and putative class members are not entitled to any equitable or injunctive relief as claimed or prayed for in the Complaint because Plaintiff and putative class members have not suffered any irreparable injury based on any alleged conduct of Defendant, and Plaintiff and putative class members have an adequate remedy at law for any such conduct.

/ / /

**NINTH AFFIRMATIVE DEFENSE**

**(Set-Off for Unearned Compensation)**

9. Without admitting the allegations of the Complaint, but rather expressly denying them, Defendant is entitled to a set-off for amounts Plaintiff and putative class members owe Defendant for receipt of any wages and other benefits to which they were not entitled and/or did not earn. *See Witt v. Jackson* (1961) 57 Cal.2d 57.

**TENTH AFFIRMATIVE DEFENSE**

**(Failure to Comply with Reasonable Directions)**

10. Defendant is informed and believes, and thereon allege, that any recovery on the Complaint as a whole, or on each purported cause of action alleged therein, is barred by California Labor Code sections 2854 and 2856 to the extent Plaintiff and putative class members failed to use ordinary care and diligence in the performance of their duties and failed to comply substantially with the reasonable directions of their employer.

**ELEVENTH AFFIRMATIVE DEFENSE**

**(Lack of Knowledge)**

11. The Complaint is barred, in whole or in part, because Defendant did not have knowledge of any alleged violations of the Labor Code.

**TWELFTH AFFIRMATIVE DEFENSE**

**(Lack of Standing)**

12. The Complaint as a whole, and each purported cause of action alleged therein, is barred in whole or in part to the extent Plaintiff and some, or all, of the putative class members lack standing to bring this action.

**THIRTEENTH AFFIRMATIVE DEFENSE**

**(Voluntary Waiver of Meal and Rest Periods)**

13. The Complaint is barred, in whole or in part, because Plaintiff and putative class members voluntarily chose not to take provided meal and rest periods as reasonably expected by Defendant, and/or voluntarily waived the same.

/ / /

**FOURTEENTH AFFIRMATIVE DEFENSE**

**(Wage Statements – No Injury)**

14. Without admitting the allegations of the Complaint, but rather expressly denying them, the Complaint is barred, in whole or in part, because, even assuming *arguendo* that Plaintiff and/or putative class members were not provided with a proper itemized statement of wages and deductions, they suffered no injury based on Defendant's alleged failure to provide itemized wage statements.

**FIFTEENTH AFFIRMATIVE DEFENSE**

**(Wage Statements – No Knowing and Intentional Failure)**

15. Without admitting the allegations of the Complaint, but rather expressly denying them, the Complaint is barred, in whole or in part, because, even assuming *arguendo* that Plaintiff and/or putative class members were not provided with a proper itemized statement of wages and deductions, Plaintiff and putative class members are not entitled to recover damages or penalties because Defendant's alleged failure to comply with California Labor Code section 226(a) was not a "knowing and intentional failure" under California Labor Code section 226.

**SIXTEENTH AFFIRMATIVE DEFENSE**

**(No Willful Conduct / Good Faith Dispute)**

16. Without admitting the allegations of the Complaint, but rather expressly denying them, the Complaint is barred, in whole or in part, because any violation of the California Labor Code was an act or omission made in good faith, was not willful, and Defendant had reasonable grounds for believing that the act or omission was not a violation of the law. As such, good faith disputes exist concerning any of Defendant's alleged violations.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

**(Excessive Fines Unconstitutional)**

17. Although Defendant denies that it has committed or have responsibility for any act that could support the recovery against Defendant in this lawsuit, such recovery is barred if any, to the extent any such act is found, because such recovery against Defendant is unconstitutional under numerous provisions of the United States Constitution and California Constitution, including the Excessive Fines Clause of the Eighth Amendment, the Due Process clauses of the Fifth Amendment and Section 1 of the Fourteenth Amendment

and other provisions of the United States Constitution, and the Excessive Fines Clause of Section 17 of Article I, the Due Process Clause of Section 7 of Article I and other provisions of the California Constitution.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

**(No Jury Trial for Claims Under Business and Professions Code)**

18. Plaintiff and putative class members are not entitled to a jury trial in connection with their claims under the California Business and Professions Code section 17200, *et seq*. and instead must adjudicate their claims by way of a bench trial. *See Nationwide Biweekly Administration, Inc. v. Superior Court* (2020) 9 Cal. 5th 279; *Hodge v. Sup. Ct.* (2006) 145 Cal. App. 4th 278; *LaFace v. Ralphs Grocery Co.* (2022) 75 Cal. App. 5th 388.

**NINETEENTH AFFIRMATIVE DEFENSE**

**(No Right to Attorney's Fees)**

19. The Complaint is barred, in whole or in part, because Plaintiff fails to state a cause or causes of action for attorneys' fees against Defendant on any basis.

**TWENTIETH AFFIRMATIVE DEFENSE**

**(Res Judicata and Collateral Estoppel)**

20. Plaintiff's Complaint, and each purported cause of action alleged therein, is barred, in whole or in part, because of res judicata and/or collateral estoppel.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

**(Manageability)**

21. Plaintiff's Complaint as a whole, and each purported cause of action alleged therein, presents unmanageable and unduly individualized issues of fact and law, and trial of those claims and causes of action on a representative basis unfairly hinders Defendant's rights to fair adjudication of those claims and causes of action, and to present individualized defenses to those claims and causes of action, thereby denying Defendant's rights to due process of law as guaranteed by the California and U.S. Constitutions.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

**(Right to Recover Attorney's Fees and Costs)**

22. Defendant has engaged attorneys to represent it in defense of Plaintiff's frivolous,

unfounded, and unreasonable action, and Defendant is thereby entitled to an award of reasonable attorneys' fees and costs pursuant to California Code of Civil Procedure section 1021.5 and/or the California Labor Code upon judgement in their favor.

**RESERVATION OF RIGHTS**

Because the Complaint is couched in conclusory terms, Defendant cannot fully anticipate all defenses that may be applicable to the within actions. The defenses asserted herein are based on Defendant's knowledge, information, and belief at this time. Accordingly, the right to assert additional defenses, if and to the extent that such defenses are applicable, is hereby reserved.

**DEFENDANT'S REQUEST FOR RELIEF**

WHEREFORE, Defendant prays for judgment as follows:

1. That Plaintiff and putative class members take nothing by the Complaint;
2. That the Complaint be dismissed in its entirety with prejudice, and that judgment be entered for Defendant and against Plaintiff;
3. That Plaintiff be denied each and every demand and prayer for relief contained in the Complaint;
4. That Defendant be awarded for cost of suits incurred herein, including reasonable attorneys' fees; and
5. That Defendant be awarded such other and further relief as the Court deems just and proper.

DATED: August 12, 2026

JACKSON LEWIS P.C.

By: ______________________

Eric G. Gitig
Jennifer Jambor-Delgado
Andrew J. Im

Attorneys for Defendant
NORTHWOOD HOSPITALITY LLC

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

**CASE NAME: JACOB CRABILL V. NORTHWOOD HOSPITALITY LLC**

**CASE NUMBER: 26STCV21087**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 725 South Figueroa Street, Suite 2500, Los Angeles, California 90017.

On August 12, 2026, I served the foregoing document described as, **DEFENDANT NORTHWOOD HOSPITALITY LLC'S ANSWER TO PLAINTIFF JACOB CRABILL'S CLASS AND REPRESENTATIVE ACTION COMPLAINT,** in this action by transmitting a true copy thereof addressed as follows:

| | |
|---|---|
| Joseph Tojarieh<br>STONEBROOK LAW<br>10250 Constellation Blvd., Ste. 2300<br>Los Angeles, CA 90067<br>Tel: 310-553-5533 | *Attorneys for Plaintiff*<br>*Jacob Crabill, individually and on behalf of all others similarly situated*<br><br>Email Addresses:<br>jft@stonebrooklaw.com; |

**[X]** **BY E-MAIL OR ELECTRONIC TRANSMISSION:** Based on a Court order or on an agreement by the parties to accept service by e-mail or electronic transmission, I caused the document(s) described above to be sent from e-mail address marisol.valdez@jacksonlewis.com to the persons at the e-mail address listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

**[X]** **STATE:** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on August 12, 2026, at Los Angeles, California.

/s/Marisol Valdez
Marisol Valdez

4933-0772-2942, v. 1

# CERTIFICATE OF SERVICE

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CASE NAME:** ***Jacob Crabill v. Northwood Hospitality LLC, et al.***

**Case No.:**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 725 South Figueroa, Suite 2800, Los Angeles, California 90017.

On August 17, 2026, I caused the foregoing document(s) described as: **DECLARATION OF JENNIFER JAMBOR-DELGADO IN SUPPORT OF DEFENDANT NORTHWOOD HOSPITALITY LLC'S NOTICE OF REMOVAL,** to be served on all interested parties in this action as follows:

| | |
|---|---|
| Joseph Tojarieh, Esq.<br>STONEBROOK LAW<br>10250 Constellation Blvd., Ste. 2300<br>Los Angeles, CA 90067<br>Telephone: (310) 553-5533<br>E-mail: jft@stonebrookelaw.com | Attorneys for Plaintiff<br>JACOB CRABILL |

**[X]** **BY NOTICE OF ELECTRONIC FILING**. The above-listed counsel have consented to electronic service and have been automatically served by the Notice of Electronic Filing, which is automatically generated by CM/ECF at the time said document was filed, and which constitutes service pursuant to FRCP 5(b)(2)(E) and L.R. 5.4 (c)-(d).

**[X]** **FEDERAL:** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on August 17, 2026, at Los Angeles, California.

*/s/Marisol Valdez*
Marisol Valdez

4898-1976-0071, v. 1